**UNITED SPECIALTIES CO. et al. v. INDUSTRIAL WIRE CLOTH PRODUCTS CORPORATION.**

**Civ. A. No. 6898.**

United States District Court
E. D. Michigan, S. D.

Sept. 26, 1949.

Leslie M. Parker, Chicago, Ill., and Thomas B. Moore, Detroit, Mich., for plaintiff.

Francis D. Hardesty and John F. Schmidt, Detroit, Mich., for defendant.

LEDERLE, Chief Judge.

1. This action involves a claimed infringement of three patents on air cleaners of the combined liquid washing and filtering type, used principally with automobile engines for the purpose of cleaning air that is to pass into carburetors. Defendant denies the infringement and contests the validity of the patents. The controversy involves Claims 1, 2, and 4 to 9, inclusive, of Zander Patent 1,951,384 issued March 20, 1934; Claims 1 to 10, inclusive of Zander Patent 2,004,150 issued June 11, 1935; and Claims 1, 2, 3, 5, 6, 7, 9, 14 and 15 of Zander Patent 2,018,755 issued October 29, 1935. Plaintiff United Specialties Company is the exclusive licensee of these three patents, and the other parties plaintiff are the owners thereof. Defendant is a Michigan corporation with an established place of business in this District, wherein it has committed the claimed acts of infringement.

2. The structure disclosed in the first, or '384 patent is a relatively simple mechanism that performs efficiently the function of an air cleaner. The device disclosed in the '384 patent is essentially the same as that disclosed in the two later patents. It consists of a cleaner formed of two housing members positioned together to form an annular inlet. Below the end of the annular inlet a sump is provided to hold cleaning fluid, such as oil. A filter mass is positioned between the sump and the outlet provided for discharging air into the carburetor. Between the sump and the filter mass a baffle plate is suspended. This baffle plate operates effectively to limit the amount of oil which the stream of incoming air carries to the filter mass, so that oil is prevented from getting into the carburetor. This baffle plate also limits movement of the oil within the sump as the vehicle moves over uneven surfaces, preventing oil from splashing into the filter mass when the sump is tilted.

3. The device is well described in Claim 1 of the '384 patent, which is typical, viz.: "1. In an air cleaner, a casing having an annular inlet and an outlet spaced from said inlet, said casing having a liquid sump therein, a dome shaped baffle centrally disposed in said casing above said sump and sufficiently close to the liquid level for incoming air to spray liquid over said baffle, and means between said baffle and said outlet for removing entrained liquid from incoming air.".

4. The device described in each of the three patents is attached to the inlet of the carburetor of an automotive engine and cleaning fluid is put into the sump. When the engine is in operation, air is drawn through the cleaner, through the carburetor and into the engine. Necessarily, the speed with which the air flows through the cleaner varies with the speed at which the engine is operated. After the air, laden with dust and other impurities, enters the cleaner, it passes inwardly and downwardly through the annular inlet and is directed

downwardly through the sump liquid. It then moves through the filter element and deposits some of the sump liquid in the filter element. Some of the impurities in the air are removed in the sump, where they remain, and some of the remaining impurities are removed in the filter. When air carries sump liquid into the filter mass, the level of the sump liquid falls. When the engine is stopped, air no longer flows through the device and a portion of the sump liquid which has been carried into the filter mass drains back into the sump by gravity, carrying with it some of the impurities which have been caught in the air stream in the filter.

5. The baffle in each of the Zander devices is so dimensioned that it covers the major part of the sump area and leaves only a relatively narrow annular area exposed between the edge of the baffle and the casing wall. Extensive tests were conducted in the presence of the court on an automobile on the street and on a flow bench in the laboratory. These tests clearly demonstrated that when the baffle plate is removed, the cleaner will not function because is is essential to prevent any part of the sump oil being carried into the carburetor, and the baffle plate performs this function in the air cleaner. In the form of the device disclosed in the first patent, the air passing under the baffle must emerge at its outer periphery in order to pass into the filter mass, while in the second and third patents some of the air could pass through small openings in the baffle and thence to the filter mass. It is apparent, however, that this variation in design does not substantially change the method of operation, and the advance in the later two patents, if any, is within the skill of a mechanic.

6. The only difference between the first and second patents in suit is that the so-called turbulators, reference numeral 27, not present in the first patent, were added in the second application, and a perforation, reference numeral 26, was made in the top of the baffle. The turbulators are placed in the path of the air as it moves within the annular inlet, causing a formation of diverging air streams, which creates some additional turbulence on the surface of the sump liquid. This '150 device, however, performs the same function as the device disclosed in the first patent in substantially the same manner.

7. The third patent in suit was designed to adapt the device disclosed in the first patent to a downdraft carburetor. In the specifications, the patentee points out that this device embodies many of the features and principles embodied in the first and second patents. This device performs the same function as the device disclosed in the first patent in substantially the same manner, and differs from the first patent only in respect to the means by which the air passes from the filter element into the carburetor. This is accomplished by having the top of the device completely covered and inserting in the center of the device an outlet conduit, reference numeral 38. Of necessity, in converting the device disclosed in the first patent in suit for a downdraft carburetor, a vertical tubular member would have to be provided. Plaintiffs' counsel frankly conceded that there is no evidence that this would have any effect upon the operation of the device. It is a mechanical structure designed to fit a new environment and well within the capacity of an ordinary mechanic skilled in the art to make such adaptation. The claims in suit of the third patent, No. 2,018,755, are invalid for want of invention.

8. The licensee, United Specialties Company, has manufactured and sold large quantities of the devices disclosed in the patents in suit, and they have met with unusual commercial success.

9. In order to sustain its claim that the claims in suit are invalid for want of invention, the defendant relies mainly upon the following prior art patents: Taecker, No. 1,722,689, and Hinkle, No. 1,851,427. These are so-called paper patents in that neither of them went into commercial use. There is no evidence that a device embodying any of these specifications would perform the functions of an air cleaner.

10. Defendant's counsel stated that the Hinkle patent was cited to show elements which would cause turbulence of the flowing air similar to the elements, reference numeral 27, shown in the second patent in

suit. It is conceded that this Hinkle patent does not show an element that corresponds to the baffle in each of the Zander devices. It is also claimed that Hinkle disclosed the principle of telescoping some of the parts, which was also present in the last Zander application. Defendant concedes, however, that the structure disclosed by Hinkle is markedly different than the structure disclosed in the Zander patents. Hinkle provided a complicated structure, which, if operable, must, of necessity, operate in a different way than does the Zander device.

The Taecker patent discloses a complicated structure bearing some resemblance to the Zander devices in that it consists of an air inlet, an air outlet, a receptacle for holding liquid, and a filter means. The structure is markedly different than the structure of the devices disclosed in the Zander patents, however, and its mode of operation must, of necessity, be different. The cap 10, shown in the Taecker device, is so connected with the container in which the filter cartridge is located that there is only one place that air can pass from the liquid chamber into the filter, and that is through the central opening 16. On the basis of the tests applied to a Zander device without the baffle, it seems evident that as soon as air started passing through the Taecker device at high velocity, it would cause the oil to move downward at the outer perimeter of the container and upward toward the single opening 16 into the filter element, and thence over into the carburetor. It also seems obvious that if there was an attempt to regulate the amount of liquid passing through this single central opening 16 by reducing its diameter, it would accelerate the speed of the oil passing in that direction. If, on the other hand, the diameter of the opening were increased, the device would then function the same as the test disclosed that the Zander devices functioned when the baffle was removed. As heretofore pointed out, there is no evidence that the Taecker device is operative. At any rate, the Taecker structure is substantially different than the Zander structure, and its mode of operation,

if it would operate, would, of necessity, be different.

11. Zander's first application disclosed for the first time a simple combination of elements operating in a new and effective way to produce a new result.

12. The defendant has manufactured and sold two types of air cleaners, exemplified by Exhibits 12 and 14. Both of these devices consist of a casing having an air inlet and an outlet spaced from the inlet, a baffle centrally disposed in said casing, filtering means above said baffle, and a liquid sump below the baffle. In operation, the air enters the annular inlet and liquid from the sump is splashed against the baffle and, in turn, carried to the filter where the entrained liquid is removed from the air by the filter, in which respect, the accused devices are exactly the same as the device disclosed in the patents in suit and perform exactly the same function in exactly the same manner.

Counsel for the defendant concedes that the accused structures have these elements but points out some minor differences which he claims avoid the charge of infringement. The differences consist of a variation in the form and dimensions of the baffle element which causes the air stream to flow in a slightly different manner. It is obvious, however, that these variations are merely a matter of mechanics' choices and the accused devices perform the same function as the devices disclosed in the patents in suit in substantially the same manner. It therefore follows that the accused devices infringe all of the claims in suit of the first patent, No. 1,-951,384.

## Judgment

In accordance with the foregoing findings of fact and conclusions of law,

It is hereby ordered and adjudged that Claims in suit 1 to 10, inclusive, of Zander Patent 2,004,150, and Claims in suit 1, 2, 3, 5, 6, 7, 9, 14 and 15 of Zander Patent 2,018,755 are invalid for want of invention.

It is further ordered and adjudged that Claims in suit 1, 2, and 4 to 9, inclusive, of Zander Patent 1,951, 384, are valid and infringed by the accused devices, Exhibits 12 and 14.

It is further ordered that defendant, its agents, servants, employees and representatives are perpetually restrained and enjoined from making, using or selling devices such as Exhibits 12 and 14, or any other device or devices which infringe said claims in suit of Zander Patent 1,951,384.

It is further ordered and adjudged that plaintiff shall recover from the defendant its damages resulting from such infringement, within six years of September 10, 1947, the date of institution of this suit, not less than a reasonable royalty for making, using or selling said invention, together with such costs and interest as may be fixed by the court in accordance with 35 U.S.C.A. § 70, and that the parties shall appear before this court on the 5th day of December, 1949, at 10 a.m. prepared to proceed with presentation of the damage phase of this case.