## JONES–McLAUGHLIN, Inc., v. AMERADA PETROLEUM CORPORATION.

### No. 386.

Circuit Court of Appeals, Tenth Circuit.

March 5, 1931.

Frank L. A. Graham, of Los Angeles, Cal. (Preston C. West, of Tulsa, Okl., on the brief), for appellant.

Arthur C. Brown, of Tulsa, Okl. (Victor C. Micher, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

### KENNEDY, District Judge.

This is a suit in which the appellant, plaintiff in the court below, seeks to enjoin and restrain the defendant, its attorneys, agents, and servants, from using an invention patented by letters patent No. 1,201,152 of date June 30, 1914, and from infringing upon said letters patent in any manner whatsoever, together with a prayer that proper steps be taken to ascertain the profits to be accounted for and the damages sustained by reason of the alleged infringement by the defendant.

The allegations of the bill are met by admissions and denials in the answer, together with averments that the improvements set forth in plaintiff's patent were neither novel not patentable and that the same had been before presented in previous patents and set forth in previous publications, together with specific averments that in view of the prior state of the art, as exemplified in the public use thereof and of the sundry patents and printed publications, that the elements of plaintiff's patent represented merely an aggregation which any one skilled in the art would be capable of and expected to produce in the exercise of the ordinary skill of his calling.

The suit in the court below was tried and considered upon the theory of plaintiff that the patented device was a combination of theretofore patented devices, together with well-known methods of production to accomplish a desired result and upon the defendant's theory that the plaintiff's use of such theretofore patented devices and known methods was simply an aggregation of elements.

Plaintiff's patent, according to the description set forth in the specifications, is denominated a "Process of Pumping Oil Wells." In language shorn of legal and scientific phraseology, plaintiff's device consists of an apparatus to pump dry gas into a well from which oil is being produced at the bottom of a tube at a lower level than the surface of the oil in said well, thereby causing the oil and gas to blend in such a way that the lighter element of such compound will rise to the surface and flow out of said tube into a separation tank where there will be a natural separation of the heavier oil and the lighter gaseous product, which latter is then conducted into compressors and thence into a separation tank, where through certain processes the gaseous product will be separated into gasoline and dry gas and the dry gas returned through means of a tube to again be used in the pumping process.

It is apparent that the device or process may be naturally divided into three major constituent elements: First, the injection of gas into the oil found in the well, causing the emulsified product to rise and flow to the surface; second, the separation tank where the oil and gaseous fluid are separated; and, third, the compression apparatus and the tank where the gasoline and dry gas are separated. It is the contention of the plaintiff that this operation and the product arrived at was a new and patentable process, while the defendant contends that the various steps above described were each singly in use and practically the same result attained long before letters patent were issued to the plaintiff.

In plaintiff's specifications of patent it is stated that the invention relates to improvements in the method of pumping oil wells by what is known as the air lift method, by the substitution of dry gas for air. This air lift method was well known to the art and of many years standing. It is clearly set forth in the Moran and Moser patent of 1903, wherein the method of raising liquid from wells by releasing an aeriform body at high pressure for the purpose of detaching a portion of said liquid and starting the same upward is clearly set forth. Other patents of this character also appear in the record, including that of Pohle, as early as 1892. In the latter patent the inventor does not confine his invention to air alone, but states in substance that any aeriform body such as natural gas and steam may be used in "oily liquids," so that it becomes apparent that the injection of gas into oil for the purpose of raising the combined product to the surface was not a new scheme at the time plaintiff received his patent. In fact, we know that the gas in and around the oil to-day in the more potential fields is what causes the oil wells to flow without artificial aid.

As to the second step in the process, when the emulsified product of oil and gas arrives at the surface, it is common knowledge that there will be a natural separation, the oil of heavier gravity, like water, soon seeking its own level, while the gaseous product will, if not restrained, largely dissolve through the action of the air. This latter product, when produced through natural underground causes or blending, is what is known as casinghead gas, and as stated by one witness, "No

particular equipment is necessary for effecting the separation of the gas from the oil product by this natural method. It is often flowed into a separating tank which is a closed tank, the oil dropping to the bottom, the gas collecting in the top over the oil." "Oil has been produced by the natural flow all my life and before I was born."

The third step in the process is the handling of the gaseous fluid which is thus separated by natural causes from the oil, and it is this product that through a form of treatment is again divided into two elements, which are, gasoline and dry gas. In plaintiff's patent this step in the process is accomplished by a condenser and a separator in which the condensed vapors are separated from the fixed gases.

In 1866 one Johnson secured a patent in which he states the object and purpose of said invention, as follows: "The nature of my invention consists in rendering the liquid vapors which rise with petroleum or are forced up with petroleum from subterranean deposits or from reservoirs from which it is desirable to remove the light benzine, naphtha, etc." In February 1914, antedating plaintiff's patent, Hapgood secured a patent in which he states of his invention, as follows: "This invention relates to condensing apparatus for the liquidation of gases under high pressure and is more particularly designed for use in connection with the recovery of gasoline from natural gas. * * *"

Thus it will be seen that each step of plaintiff's invention or process, and included in his patent, was either covered by patent previously or was theretofore well known to the art.

This controversy therefore resolves itself into the matter of determining whether the invention of plaintiff is one which represents a true combination for the purpose of acquiring a hitherto undiscovered and unacquired result or whether it is, as defendant contends, merely an aggregation of elements producing no new and theretofore undiscovered result.

The courts have frequently spoken upon this subject, and a few selected paragraphs will suffice to express the thought as to the manner in which devices and processes of the general character here under investigation should be analyzed.

In Hailes v. Van Wormer, 20 Wall. 353, at page 368, 22 L. Ed. 241, Justice Strong speaking for the court uses the following language:

"Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention."

In Richards v. Chase Elevator Company, 158 U. S. 299, the court, at page 302, 15 S. Ct. 831, 833, 39 L. Ed. 991, says:

"It is not claimed that there is any novelty in any one of the elements of the above combination. They are all perfectly well known, and, if not known in the combination described, they are known in combinations so analogous that the court is at liberty to judge of itself whether there be any invention in using them in the exact combination claimed. * * * Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements. Indeed, the multiplicity of elements may go on indefinitely without creating a patentable combination, unless by their collocation a new result be produced."

In Moore v. Saunders, 247 F. 314 (C. C. A. 8), Judge Hook speaking for the court says, at page 317:

"To be sure the new assemblage accomplishes as an entirety more than either old element did in separate operation, and in a way the elements were, as was said below, 'successively co-operative.' But the co-operation was like that of the successive changes of horses in a coach journey from London to Bath. Those out of London, their task done, dropped their burden at Maidenhead; others picked it up there, and carried it to Newbury; and so on to destination. There was, of course, a 'successive co-operation'; but in the sense of the patent law a patentable combination of old elements means more than that. In Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749, the court expressed the requisite in this way: 'In a patentable combination of old elements, all the constituents must so enter into it as that each qualifies every other.'

"There must be a coaction between them, and not a mere hitching up of separate contributions, each one of which continues independently to perform its customary function; otherwise, there is but a mechanical juxtaposition that is not patentable."

In Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, which is the more or less famous "pencil case" known to patent law, Mr. Justice Hunt, at page 357 of 92 U. S., summarizes his views in the following language:

"The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. There must be a new result produced by their union: if not so, it is only an aggregation of separate elements."

The same views are again reiterated in Office Specialty Manufacturing Company v. Fenton Metallic Manufacturing Company, 174 U. S. 492, at page 498, 19 S. Ct. 641, 643, 43 L. Ed. 1058, where Mr. Justice Brown expresses the opinion of the court as follows:

"Putting the Hoffman patent in its most favorable light, it is very little, if anything, more than an aggregation of prior well-known devices, each constituent of which aggregation performs its own appropriate function in the old way. Where a combination of old devices produces a new result, such combination is doubtless patentable; but where the combination is not only of old elements, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Womer, 20 Wall. 353, 368 [22 L. Ed. 241]; Reckendorfer v. Faber, 92 U. S. 347, 356 [23 L. Ed. 719]; Phillips v. Detroit, 111 U. S. 604, 4 S. Ct. 580 [28 L. Ed. 532]; Brinkerhoff v. Aloe, 146 U. S. 515, 517, 13 S. Ct. 221 [36 L. Ed. 1068]; Palmer v. Corning, 156 U. S. 342, 345, 15 S. Ct. 381 [39 L. Ed. 445]; Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831 [39 L. Ed. 991]. Hoffman may have succeeded in producing a shelf more convenient and more salable than any which preceded it, but he has done it principally, if not wholly, by the exercise of mechanical skill."

When we analyze the patent of the plaintiff in the light of this high authority, it seems to us that the trial court is right in arriving at the conclusion that the device and process of the plaintiff purporting to be covered by his patent is in fact an aggregation as distinguished from a true combination, which latter alone is patentable. Oil by the use of compressed air or dry gas has for many years prior to the patent of plaintiff been caused to rise to the surface and to flow as if from natural causes by virtue of underground combinations. It is a common and natural process that the product thus produced should, upon its contact with the air, separate itself into two component parts of liquid oil and the gaseous fluid. The matter of separating this gaseous fluid through compression and separation into gasoline or similar constituent product and dry gas, is also something previously patented and known to the art for years, as reference has been above made to various exhibits in the record. In the language of the courts each element of plaintiff's patent performs some old and well known function and no new result is accomplished.

But the plaintiff contends that there is something new in his process which creates a hitherto unknown product through the blending of the oil and gas in the well and which is entitled to consideration from the standpoint of a process patent. We cannot see that any particular stress has been laid on this feature in the specifications or claims set forth in the patent to the extent that it was contemplated that there should be any particular product created with the avowed intention of producing more gasoline. Nor do the uses to which plaintiff's apparatus have been put as shown by the evidence justify such a conclusion, as one of plaintiff's licensees testifies that it was used for the purpose of pumping. Neither does the element of "fractionizing" the product by the application of the gas to the oil in the well for a particular purpose other than causing the product to rise to the surface appear to be particularly within the scope of the patent. Doubtless the application of either air or gas to water or oil causes fractions in the product. This is clearly set forth in the Moran and Moser patent, where, by the use of air, the column of liquid is broken, and in the Boyce patent of 1886 the patentee speaks of lightening the oil in order to make it flow easily. These processes, in our opinion, clearly mean "fractionizing" in the larger and generally accepted sense of that term. We cannot see that this theory of the plaintiff can better his position in the light of his specifications and the prior state of the art, as there is not presented a new and undiscovered device, or process, or product.

For the reasons stated, we hold that the trial court was right in dismissing plaintiff's bill of complaint, and the judgment will be, and is, affirmed.