## TRAGER et al. v. CREST SPECIALTY et al.
### Civ. A. No. 49 C 8.

United States District Court
N. D. Illinois, E. D.

Jan. 19, 1950.

Max R. Kraus, Chicago, Sidney Neuman, Thiess, Olson & Mecklenburger, Chicago, for plaintiffs.

Clarence E. Threedy, Chicago, for defendants.

IGOE, District Judge.

### Findings of Fact

1. Plaintiff Eoina Nudelman is the owner of the entire right, title, and interest in and to Nudelman patent in suit No. 2,455,-

266, issued November 30, 1948, on an application filed February 17, 1948, and entitled "Children's Amusement Device."

2. Plaintiff David C. Trager is now, and has been since May 12, 1948, the exclusive licensee under the patent in suit, and is engaged in the manufacture and sale of the patented device under the trade name Topic Toys.

3. Defendant Crest Specialty is a limited partnership consisting of defendants Ben B. Manaster, Rose Manaster, Carol Ruth Manaster, and Sol Eliot, all residents of the State of Illinois.

4. The Nudelman patent in suit is for a children's amusement device which provides stimulation for children to eat, and which serves to encourage and educate them to eat, by providing an "eating" table companion which is fed from the same bowl, with the same spoon and the same food as the child. This device is not merely a toy, but is highly utilitarian in character and has decided educational and psychological value.

(a) The Nudelman patent in suit shows a simulated animal figure in the form of a small pig, having a body portion adapted to be positioned closely adjacent the exterior of a feeding bowl. The body portion has a forwardly extending portion projecting closely adjacent to the rim of the bowl and overlying a portion of the bowl. The forwardly extending portion assumes the form of the front paws or feet of the animal figure, and has a simulated mouth and a passage. The passage has walls extending solely downward from the mouth through the forwardly extending portion. A head is secured adjacent to the forwardly extending portion, and is movable to permit the contents of a spoon to be emptied into the mouth and to fall by gravity into the feeding bowl. The forwardly extending portion has an undercut for engagement with a bowl, to prevent lateral separation of the animal figure from the bowl during feeding, so that food emptied into the animal's mouth will pass back immediately into the bowl. The portion of the animal figure overhanging the top of the bowl does not extend all the way into the bowl, and therefore the capacity or area of the bowl is not reduced in any way by virtue of the short downward wall extending from the mouth. The device of the patent in suit permits baby food emptied into the animal's mouth to immediately drop back into the bowl without clogging the passage and without wasting any food.

5. The inventive concept of Nudelman is well grounded in psychology. It takes full advantage of the process of mimicry, which in the final analysis is the foundation of practically all methods of instruction employed for infant children. The Nudelman device was the first ever to teach the idea of providing an "eating" table companion for a young child which utilizes the psychological process of mimicry in providing the companion to be fed either by the mother or the child itself simultaneously with the feeding of the child. The feeding of the table companion with the same food and from the same bowl and the apparent appearance of the animal consuming food provides a stimulant for the child to do likewise.

6. It was of the essence of Nudelman's concept that the device, employed for the purpose of providing instruction and encouragement for the child, simulate a living creature comprehensible to a child, and have body, head, and mouth so that food could actually be fed to it, thereby creating the illusion of eating and thus stimulating, instructing, and encouraging the child to join the "eating" table companion and to eat.

7. It is recognized that many children in the early tender years are poor eaters and have to be encouraged and otherwise stimulated to eat by various artifices, and that this problem has existed for a long period of time. The device of the Nudelman patent in suit was directed toward solving that problem and is the first device of its character to aid in the solution of such a problem.

8. Prior to February 17, 1948, the efforts to deal with the problem of holding the interest of infant children during feeding periods and of encouraging them to eat were fundamentally and basically quite different from the means employed by Nudelman. These prior attempts consisted of

202

nothing more than the utilization of knives and forks with handles simulating living creatures or of decorated dishes or bowls. L'Heureux patent No. 2,200,696, dated May 14, 1940, and Ide patent No. 2,224,683, dated December 10, 1940, disclose typical devices employed in the attempted solution of the problem which was dealt with by Nudelman.

9. Prior to February 17, 1948, there was a substantial demand for a device like that shown, described, and claimed in the Nudelman patent in suit. Defendant Sol Eliot, who had been in the business of manufacturing and selling related items for a number of years prior to 1948, found, as the result of a survey made by him, that there was a market in 1948 for a device like that shown and described in the Nudelman patent, and he estimated as of August, 1948, that such a device could be sold and distributed and otherwise put into commerce in large numbers, to-wit, 90,000 per month.

10. The device shown, described, and claimed in the Nudelman patent in suit was unique and ingenious and constituted a genuine improvement over any prior device either shown, described, or manufactured and sold in this country. Defendants have characterized their own device charged herein to infringe as incorporating a "sensational new idea" and as the "recognized new idea that makes children willing eaters." In their advertisements defendants have proclaimed that their device charged herein to infringe is sparked with cleverness, color, and imagination and is an "unusual" item. In the period from September, 1948, through September, 1949, plaintiff Trager has sold 191,368 feeding devices under the Nudelman patent in suit, this representing a retail sales dollar volume between $180,000.00 and $185,000.00.

11. Plaintiff Trager began the construction of molds for the commercial manufacture of the device shown, described, and claimed in the Nudelman patent in suit on or about May 12, 1948. Prior thereto and thereafter he distributed handmade samples of the device to various prospective buyers, and by means of salesmen began the solicitation of orders therefor. Defendants derived the device herein charged to be infringed from the plaintiffs, it being admitted by defendant Ben B. Manaster that the accused device was copied from the device of the plaintiffs.

12. After learning of the device of the Nudelman patent in suit, the defendant Ben B. Manaster filed an application for patent on July 2, 1948, which matured into patent No. 2,453,922, dated November 16, 1948. As filed, all of the claims of this application were specific and limited to the specific construction disclosed in the Manaster application in which the head of the animal was secured to the body portion thereof by means of a spring member or to a construction in which the head of the animal oscillated with respect to the body of the animal when engaged by a spoon. This patent is subsidiary and tributary to the patent in suit. Although the Nudelman and Manaster patents were copending, no interference therebetween was declared by the United States Patent Office under its Rules of Practice, for the reason that Manaster showed a different species from that of Nudelman, and because Manaster was claiming his species specifically whereas Nudelman was claiming the invention generically.

(a) Subsequent to the issuance of the Nudelman patent in suit, and prior to the bringing of this action, defendants have made and sold, within the Northern District of Illinois, devices like that of the Manaster patent and as exemplified by Plaintiffs' Exhibit No. 2. This device which is charged as an infringement in this action consists of an animal figure in the form of a puppy. The body portion of the puppy is designed and intended to be positioned outside and closely adjacent to a feeding bowl. The animal has a simulated mouth, and its front paws overhang the rim of the bowl and does not extend all the way into the bowl in such manner as to reduce the capacity or area of the bowl. A passage extends downward from the mouth through the front paws and is in open communication with the bowl. A head is secured adjacent the forwardly extending portion of the body, this head being movable to permit the contents of a spoon to be emptied into the mouth. The front paws

of the animal have an undercut which engages the bowl and prevents lateral separation of the animal figure from the bowl during the feeding so that the food emptied into the animal's mouth will pass back immediately into the bowl. This device is admittedly one intended to encourage and stimulate infant children to eat. Thus in the Manaster patent it is stated that the device shown therein "will have the effect of inducing the child to alternately feed itself and the character, thus stimulating the child to consume its food." It also appears from the said Manaster patent that the purpose of the undercut and the overhanging paws slightly depending into the bowl is that of preventing the bowl and the body portion from being easily moved apart.

13. Defendants' device accused herein responds to claims 2 and 3 of the Nudelman patent which are in suit, and constitutes an infringement of each of said claims.

14. Smith patent No. 2,207,417, dated July 9, 1940, entitled "Cereal Bowl", is relied upon by defendants as anticipating claim 2 of the Nudelman patent in suit. Together and in combination with other patents, such as No. 226,831 to Bowen, dated April 27, 1880, No. 843,024 to Livingston, dated February 5, 1907, No. 1,751,773 to Trosper, dated March 25, 1930, and No. 1,792,129 to Theodoropulos, dated February 10, 1931, this Smith patent is also relied upon to negative novelty and invention in the structure of claim 3 of the patent in suit. Defendants also introduced in evidence, but did not have their patent expert explain or describe, Smith patent No. 2,-170,311, dated August 22, 1939; Shea patent No. 356,168, dated January 18, 1887, and MacMorris patent No. 516,354, dated March 13, 1894.

15. The Smith patent No. 2,207,417 does not, either alone or in combination with other patents, show the device of the Nudelman patent in suit to be lacking in novelty. The structure of Smith is not only entirely dissimilar to that of Nudelman, but the two devices are diametrically opposed in purpose and function.

(a) The Smith patent discloses a cereal bowl having a hopper or bin positioned inside thereof for separating the cereal and milk. The hopper or bin of the Smith patent is between one third to one half the size of the bowl. The hopper is placed inside and within the bowl and correspondingly reduces the capacity and size of the bowl. The hopper has an inclined wall extending upwardly and rearwardly of the bowl and has a side opening leading into the bowl. The hopper or bin is filled with cereal in the same manner as a storage bin, and milk is poured into the bowl. The hopper merely serves to separate and keep the cereal from contacting the milk so that the cereal is maintained in a crisp condition until eaten. In eating, the spoon is placed adjacent the side bottom outlet to gather the dry cereal that drops from the bin in measured quantities, the spoon simultaneously taking up some of the milk in the bowl. The user thus eats a cereal which is momentarily saturated with the milk in the spoon.

(b) It is the avowed purpose of Smith, repeatedly stressed in the patent, to maintain precooked dry cereals in the hopper and bin separated from the milk, thereby to retain original crispness and to aid digestion by more intensive mastication of food. The hopper of Smith was not designed or intended to perform the function of the device shown in the Nudelman patent. Moreover, it is contrary to the express purpose of the Smith device to return food to the hopper from the bowl. The device of the Smith patent has an object in view which is entirely different from that of Nudelman. It is used under radically different conditions to perform a function quite different from that of the Nudelman device, and it employs an antithetical principle of operation.

(c) A demonstration in court by defendants' patent expert of a model of the Smith patent presented by him showed that Smith is at least inoperative when employed for the purpose of repeatedly returning to the hopper one type of dry cereal mixed with milk.

(d) Defendants' patent expert admitted that it is contrary to Smith's express teachings to take spoonfuls of mixed cereal and milk from the bowl and put them back into the hopper. He also conceded that there is

no suggestion or hint in the Smith patent of such an operation. He admitted that he was unable to find in the Smith patent any teaching of stimulating and encouraging infants to eat by psychology and mimicry. The reference in the Smith patent to holding the interest of children was conceded by defendants' expert to refer to a concept quite different from that of Nudelman.

(e) The testimony of defendants' patent expert in which he applied the language of claim 2 of the Nudelman patent in suit to the structure of Fig. 4 of the Smith patent must be rejected as lacking in verity. This testimony constituted an unreasonable distortion of the language of the claim, and wholly failed to take into account the meaning and sense of the language, the disclosure of the patent in suit and its objects and purposes. Read upon the device of Fig. 4 of the Smith patent, claim 2 of the Nudelman patent in suit ceases to represent the invention of Nudelman. Among other things, the main, central, or principal portion of Smith's hopper is within the bowl, and it cannot be said that the small portion of the wall 12 and the projection 23 which are exterior of the bowl, constitute the "body portion" of the hopper.

16. The other patents relied on by defendants are no more pertinent than Smith patent No. 2,207,417. None of those patents discloses or suggests the device and structure described and claimed in the patent in suit. While it is true that the Bowen, Livingston, Trosper, and Theodoropulos patents disclose hinged heads of various animal figures, none of these devices were designed or intended to serve as an "eating" table companion for a young child, and none purport to take advantage of the psychological process of mimicry to encourage and stimulate infant children to eat. In their respective environments these hinged heads accomplish functions and purposes quite foreign to the function and purpose of the device of the patent in suit.

17. The conception and production of a device like that shown and described in the Nudelman patent in suit was beyond the skill of a mechanic, and required the exercise of inventive genius.

## Conclusions of Law.

1. The Court has jurisdiction of the parties and of the subject matter.

2. The patent in suit was regularly issued by the United States Patent Office. Defendants in assailing it have a heavy burden of proof.

3. To anticipate the patent in suit —or to show that the device thereof was lacking in novelty—the prior patent must show that device or its substantial equivalent doing the same work in substantially the same manner as the patented device.

4. Patents cannot be anticipated by prior devices which might, by modification, be made to accomplish the function performed by the device of the patent in suit when those devices were not designed, adapted, or used to perform the same function and where the prior patent contains no suggestion of the way in which the result sought is accomplished.

5. Prior art patents are to be measured as anticipations by what is clearly and definitely expressed in them; they may not be reconstructed in the light of the invention in suit and given a significance and importance which in fact they did not have in the art; they may not be reconstructed in the light of later acquired knowledge and then used as a part of the prior art.

6. The conception and production of the device of the patent in suit required the exercise of invention and the presence of that invention is persuasively demonstrated by the evidence.

7. The patent in suit describes, and claims 2 and 3 claim, a new and highly utilitarian device which was inventive, involves a new principle and function, and achieves a beneficial result. It is therefore good and valid in law.

8. Each of claims 2 and 3 of the Nudelman patent in suit embodies and covers a device like that shown and described in that patent. The language of the claims is clear and unambiguous and complies with the patent statute in particularly pointing out and claiming the improvement asserted as an invention.

9. The claims in suit are not limited to the exact details of the specifications, but include all substantial equivalents which do the same work in substantially the same way and accomplish substantially the same result.

10. Defendants' device herein accused as an infringement is substantially the same as that shown and described in the Nudelman patent in suit; it literally and in substance responds to the language of the claims in suit and infringes each of said claims.

11. The issuance of Manaster patent No. 2,453,922 does not create a presumption of non-infringement by the device shown and described therein.

12. The comparative utility of the patented device and the accused device is immaterial. That the accused device does not work as perfectly as plaintiffs' device does not avoid infringement.

13. Plaintiffs are entitled to judgment and to their costs as in such cases made and provided by law.