UNITED SPECIALTIES CO. et al. v. DUSTRIAL WIRE CLOTH PRODUCTS CORP.

Nos. 11132, 11133.

United States Court of Appeals Sixth Circuit.

Jan. 12, 1951.

As Amended Feb. 7, 1951.

Francis D. Hardesty, Detroit, Mich. (Francis D. Hardesty, Detroit, Mich., on the brief), for Industrial Wire Cloth Products Corp.

Leslie M. Parker, Chicago, Ill. (Thomas B. Moore, Detroit, Mich., Leslie M. Parker,

Danforth Killips, Chicago, Ill., on the brief), for United Specialties Co. and others.

Before HICKS, Chief Judge, and SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The action below was for infringement of three Zander patents for air cleaners of the combined liquid washing and filtering type used principally with automobile engines. The patents are No. 1,951,384 issued March 30, 1934 upon an application filed February 25, 1932; No. 2,004,150 issued June 11, 1935, upon an application filed April 12, 1933, and No. 2,018,755 issued October 29, 1935, upon an application filed February 19, 1934. The court held the 384 patent valid and infringed, and the others invalid as showing no patentable invention over the first, without ruling upon the question of their infringement. The plaintiff assails the decree both as to its holding of validity in respect to the 384 patent, and that it was by it infringed. The defendant challenges the decree in so far as it dismissed its complaint for infringement of the 150 and 755 patents.

It will be seen from the dates of the applications and the dates of issue that all three patents were co-pending in the patent office before the first patent was issued. The second patent relates to a relatively minor improvement on the first, and the third patent was designed to adapt the device of the first patent to a downdraft carburetor and embodies most of the features and principles of the first and second patents. The principal contention of the cross-appellant is that the court was in error in treating the first patent, issued to an inventor whose applications for the second and third patents were co-pending at the time of issue, as part of the prior art.

The structure disclosed in the 384 patent is, we think, in agreement with the view expressed by the district judge, a relatively simple mechanism. He describes it as a device formed of two housing members telescopically positioned to form an annular air inlet. Below this inlet is a sump to hold cleaning fluid, and a filter mass is positioned between the sump and air inlet. Between the sump and the filter is suspended a baffle plate, the purpose of which is to limit the amount of oil which incoming air carries to the filter so as to prevent oil from passing into the carburetor. A typical claim of this patent is Claim 1, set forth in the margin.[1] The operation of the device is well described by the district judge as follows: "When the engine is in operation, air is drawn through the cleaner, through the carburetor and into the engine. Necessarily, the speed with which the air flows through the cleaner varies with the speed at which the engine is operated. After the air, laden with dust and other impurities, enters the cleaner, it passes inwardly and downwardly through the annular inlet and is directed downwardly through the sump liquid. It then moves through the filter element and deposits some of the sump liquid in the filter element. Some of the impurities in the air are removed in the sump, where they remain, and some of the remaining impurities are removed in the filter. When air carries sump liquid into the filter mass, the level of the sump liquid falls. When the engine is stopped, air no longer flows through the device and a portion of the sump liquid which has been carried into the filter mass drains back into the sump by gravity, carrying with it some of the impurities which have been caught in the air stream in the filter." [86 F.Supp. 37, 38.]

The district judge was of the view that the elements of the invention were old but that in their utilization a new combination resulted which produced a new mode of operation with new and beneficial results in an air cleaner, so that Zander

1. "1. In an air cleaner, a casing having an annular inlet, and an outlet spaced from said inlet, said casing having a liquid sump therein, a dome shaped baffle centrally disposed in said casing above said sump and sufficiently close to the liquid level for incoming air to spray liquid over said baffle, and means between said baffle and said outlet for removing entrained liquid from incoming air."

made a distinct advance over the prior art which, before Zander, had not accomplished the same result in the same way, and that the accused cleaner of the appellant infringed because it accomplished substantially the same result in the way disclosed by Zander. This leads us to a consideration of the prior art and to the tests which the Supreme Court, in its more recent decisions, have imposed upon us in the consideration of combination patents. The latest word upon that subject is said in Great Atlantic and Pacific Tea Company v. Supermarket Equipment Corp., 71 S.Ct. 127, 130, decided December 4, 1950, on appeal from this court, and is a mandate for us to scrutinize combination patent claims with a care "proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."

Conforming to this mandate we find that air cleaners are old with a substantial recorded art and by implication at least of a practical art not reviewed in the record. The concept of removing injurious particles from the air as it passes into various operating devices by washing it, that is, by passing the air through a liquid bath of water or oil, was disclosed long before the turn of the century, the idea being that impurities therein tend to create wear and reduce the life of an engine or other contrivance. Apparently this purification method did not achieve sufficiently adequate results and many inventors applied themselves to the problem of adding to the washing means a filtering element by which the finer particles of dust may be removed from the air by passing mixed oil and air through a filter comprised of porous material, such as sponges, meshed wire, wool or other similar fibrous, pervious or absorbent material.

To this basic concept as illustrated in Hendrickson No. 1,577,715, March 23, 1926; Taecker No. 1,722,689, July 30, 1929; Hendrickson No. 1,761,014, June 3, 1930; Wilson No. 1,838,511, December 29, 1931; Wilson No. 1,838,512, December 29, 1931, and Hinkle No. 1,851,427, March 29, 1932, Zander contributed nothing that is fundamentally new. He passes the air through an oil bath and then through a filter to remove its impurities. They all did that. There is nothing patentably novel in bringing air into the sump through an annular opening rather than through a pipe, and whether air is projected directly into the oil bath or tangentially as in Garner No. 1,897,372, February 14, 1933, would seem patent-wise immaterial, as in either case the air would be mixed with oil before passing into the filter element. The district court thought Zander to denote invention in providing a baffle so dimensioned that it covers the major part of the sump area and leaves only a relatively narrow annular area exposed between the edges of the baffle and the casing wall. He was led to this conclusion by an experiment which showed that when the baffle plate in Zander is removed the cleaner will not function because it is essential to prevent any part of the sump oil being carried into the carburetor and the baffle plate performs this function. It would seem to us that when, in designing an air cleaner, it was found that too much oil spray found its way into the filter, it would immediately occur to any mechanic to reduce the excess by some interruption in the spray, whether it be a baffle, a plate or some other means, and this is not invention. But even if so, a functionally similar device is disclosed by Hendrickson and in the Garner et al. patent Garner says, "It is also an object of the invention to provide a means for controlling the circulation of oil within the air cleaner. In the simple and preferred form of the invention disclosed herein, this means consists of a deflector plate so placed in the oil cup that it will permit a predetermined portion of the oil to be

sprayed up into the filter but will prevent the remaining portion of oil below the deflector plate from being taken up into the filter and possibly on through the filter and into the engine." It is true that this plate is not positioned as in Zander, and that in some of Zander's claims the reference is to a dome shaped baffle. But in claims 4, 5, 6, 8 and 9, Zander fails to limit his baffle to one that is dome shaped. This would indicate that the precise configuration of the baffle, as elsewhere claimed and as shown in the drawings, was not an indispensable element in the claimed inventive combination. In a combination patent of old elements and in a crowded art, there would seem very little room for the inventive faculty when Zander made his experiments. That turbulance will insure a better mixing of oil and air or air and gas was well known in the automobile and other industries long before Zander, and that it may be achieved by narrowing the throat through which fluids are driven was thoroughly understood.

 It is true that the plaintiff as the licensee of Zander achieved marked commercial success with the Zander type of cleaner, but commercial success, even if clearly established, may not be controlling. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S. Ct. 449, 79 L.Ed. 997; A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531. Nor does the fact that the plaintiff paid tribute to the patent by the payment of substantial royalties aid us in determining invention. We have found it to be true, as in John E. Thorpp's Sons' Co. v. Seiberling, 264 U.S. 320, 44 S.Ct. 346, 349, 68 L.Ed. 708, that sometimes there are sweeping claims, which were well calculated to induce acquiescence by those without sufficient knowledge of the prior art or adequate capital to resist.

 While it is true that no single recorded disclosure of the prior art completely anticipates Zander, yet all of the elements of the Zander combination are to be found in the prior art in an identical or analogous environment. It will not do to dispose of Taecker and Hinkle as references because they were merely paper patents. While it may be true that a patent not commercially exploited must be considered with caution, yet there are frequently reasonable considerations why patents which substantially advance the art fail to get into commercial use. The reasons may be economic or financial. The time may not be opportune for the development of a meritorious invention. This is especially true in mass production industries where even a small change necessitates the retooling of a plant with the consequent expenditure of capital and loss of production.

 While the court thought that Zander had produced a new combination with a new mode of operation and new and beneficial results, we find difficulty in sensing either. Zander produced an air cleaner of a well known type with substantially the same or equivalent elements. When we search for new and beneficial results achieved we consider the words of the inventor himself. In his 384 patent he recites, "In the past, difficulty has been experienced in providing cleaners of this type, having an efficiency under normal operating conditions in excess of 95%, sufficiently economically to make practical the installation of the cleaners on practically all types of automotive vehicles." This leads also to the implication, elsewhere referred to, that he had in mind a practical as well as a recorded art. The difference is one of degree and it has never been thought that mere difference of degree denotes invention except, perhaps, in those rare cases where the difference in degree is so marked and involves the solution of a problem long recognized but not earlier solved, so that a difference in degree becomes, in effect, a difference in kind. That is not the case here.

 While we do not agree with the district court that a prior but co-pending application belongs in the prior art, Toledo Plate & Window Glass Co. v. Kawneer Mfg. Co., 6 Cir., 237 F. 364, when the issues do not involve priority of conception and putting into practice, we do agree

that Zander's second and third patents are invalid. They operate substantially as disclosed by the prior art and if the 384 patent discloses no patentable advance over what has gone before, the 150 and 755 patents certainly do not, for they operate on the same principles and are in accord with disclosures well before Zander. The second patent merely discloses a permissible but non-inventive change in the regulation of the oil spray that passes into the filter element, and the third patent discloses but a reversal of parts to accommodate a downflow carburetor. Their claims are not inventive.

The cross-appeal is dismissed and the decree, so far as it sustains validity and infringement of the 384 patent, is reversed with instructions to dismiss the bill.