**ROBINSON AVIATION, Inc. et al. v. BARRY CORP.**

Civ. A. 51–387.

United States District Court
D. Massachusetts.

Aug. 18, 1952.

Robert S. Sanborn, Dike & Sanborn, Hector M. Holmes, Boston, Mass. (Robert V. Morse, Ithaca, N. Y., of counsel), for plaintiffs.

Robert L. Thompson, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This is an action for infringement of patent No. 2,425,565 issued August 12, 1947, covering a vibration absorption mount, in which plaintiffs seek damages and an injunction. Claim 1 alone is in suit.

Defendant has admitted by stipulation that its type 770, 780, 860, 980 and 896 mounts infringe Claim 1 of the patent if it is valid, but asserts that the patent is invalid and seeks by way of counterclaim for a declaration of this Court to that effect.

In the complaint plaintiffs also allege that defendant's type M–112 infringes Claim 1. However, during the trial plaintiffs admitted that this contention was not well founded and accordingly the complaint will be dismissed as to this item.

### Findings of Fact

The plaintiff Robinson Aviation, Inc. is a New York corporation having its principal place of business at Teterboro, New Jersey. Cecil S. Robinson and Dorothy H. Robinson are residents of New Jersey and officers of Robinson Aviation, Inc. The patent in suit was originally owned outright by Cecil S. Robinson, but he assigned a one-half interest in the patent to his sister Dorothy H. Robinson. Robinson Aviation, Inc. is a licensee of the patent. Defendant is a Massachusetts corporation, having a place of business at 700 Pleasant Street, Watertown.

The patent relates to mechanical vibration absorption units which are mountings for absorbing or reducing vibrations or shock that would otherwise be transmitted to delicate instruments on mobile vehicles, particularly airplanes. The unit is intended to carry the absorption down to practically invisible vibrations. In order to accomplish this result each unit possesses a three-way freedom of movement, absorbing vibrations which push up and down in a vertical direction and those which occur laterally. In the normal case four of these devices are under and attached to each corner of the supported member, such as an airplane camera.

Claim 1 in suit reads as follows:

"In a vibration absorption mount, the combination of a casing having an opening, a resilient grommet in said opening adapted to receive impacts from above, below and sideways, a mounting stud extending thru said opening but normally not touching the grommet except under excessive shock or vibration, a flange on said stud, and a main resilient member supporting said flange in said casing, said resilient member being so proportioned that the flange will float out of contact with said grommet under normal operating conditions so as to absorb vibrations reaching the casing, said grommet and flange impinging in case of excessive axial shock or vibration, and said stud and grommet impinging in case of excessive lateral displacement."

Reduced to its barest essentials, the claim in suit covers five elements which consist of a case with a round opening on the top of it, a resilient grommet inserted in the case, a stud inserted within the grommet but floating in such a manner as not to touch the grommet, and on the end of the stud is a flange which is supported by a resilient ball-like member.

*The Question of Invention*

The U. S. Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, reaffirmed the rule that the mere combination of a number of old parts or elements which, in combination, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.

Devorss patent No. 2,430,709, but for certain minor differences, discloses every element of Claim 1 except the grommet. Devorss has a casing with an opening at the top, a mounting stud extending through the opening, a flange on the stud and a main resilient member supporting the flange in the casing. The resilient member is so proportioned that under normal operating conditions the flange floats out of contact with the top of the casing. To prevent the flange from striking against the top of the casing during excessive axial shock, a rubber bumper surface is provided above the flange, which hits the underside of the top of the casing. To prevent the mounting disk from hitting the top surface of the casing when the instrument is moved downwardly a rubber ring is bonded to the disk and that rubber ring engages the top of the casing upon such downward movement. Lines 41 to 45 of column 4 of the Devorss specification disclose that the stud may be covered with rubber and the opening in the top of the casing may be made sufficiently small so that the rubber covering will engage the edge of the opening in the top of the casing in case of excessive lateral displacement of the stud.

Thus it is seen that Devorss disclosed every element in his patent which is found in Claim 1 of Robinson's patent with the exception of a grommet. However, other references cited by defendant show the prior use of a rubber grommet to accomplish the same functions as it accomplishes in the patent in suit. Such a grommet was used in Robinson's Vibrashock Suspension (which plaintiffs have agreed belongs to the art prior to December 15, 1944 and will be discussed later herein), Nakken Patent No. 2,397,804, Pietz Patent No. 2,470,185. To add the grommet shown in these references to the Devorss casing would not, in my opinion, involve invention.

■■ The application for the patent in suit was filed December 15, 1945 and the patent was granted August 12, 1947.

Plaintiffs made no attempt at the trial of the cause to prove their actual date of invention, consequently they are restricted to their filing date for conception of the invention. Leichsenring v. Freeman, 103 F.2d 378, 26 C.C.P.A., Patents, 1153; Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; International Seal & Knot Protector Co. v. E. J. Brooks Co., 3 Cir., 98 F.2d 647. Devorss and Pietz were co-pending with Robinson and therefore ought not to be considered as prior art. Stelos Co. v. Hosiery Motor-Mend Corp., 2 Cir., 72 F.2d 405; United Specialties Co. v. Industrial Wire Cloth Products Corp., 6 Cir., 186 F.2d 426; Permo, Inc., v. Hudson-Ross, Inc., 7 Cir., 179 F.2d 386. See on the other hand intimations to the contrary in Detrola Radio & Television Corp. v. Hazeltine Corp., 313 U.S. 259, 265, 61 S.Ct. 948, 85 L.Ed. 1319. However, the Nakken patent may be held to be part of the prior art, even though the application for its issue was co-pending with Robinson's application, on the ground of public sale more than one year prior to the filing date of the patent in suit. 35 U.S.C.A. § 31.

I find that the owners of Nakken prior to December 15, 1944 (which is more than one year prior to the application for the patent in suit) sold approximately 350 recorder-reproducer units to the U. S. Navy, each unit containing four of the Nakken shock mounts.

It has been agreed between the parties that a unit known as Robinson's (plaintiffs') Vibrashock Suspension illustrated the state of the art prior to December 15, 1944—which is one year prior to the date of plaintiffs' patent application.

Robinson's Vibrashock Suspension is a device made up of two flat metal polygon plates (hereafter referred to as the upper member and the lower member) arranged in layers one on top of the other and connected on two sides. The upper member on which the supported instrument rests has a somewhat larger overall surface than the lower member. This device uses at least two rubber grommets and four resliient members. The grommets are mounted in openings in the lower member. Two round

metal studs secured to the under surface of the upper member extend downward and pass through the openings in the grommets with a portion of the stud protruding below the bottom surface of the lower member. To this there is attached a round flange with a washer interposed between the flange and the lower surface of the grommet. The stud normally does not touch the grommet except under excessive lateral displacement. The upper member is supported by four resilient members which rest on the lower member and are so proportioned that the flange and washer float out of contact with the grommet under normal operating conditions. The grommet and the washer supported on the flange impinge in case of excessive axial shock. In this combination the grommet accomplishes exactly the same functions which it accomplishes in Claim 1 of the patent in suit; namely, it receives impacts from above, below and sideways. Other elements present here which are also found in Claim 1 are: a flange, a resilient member, and to a limited extent a stud which performs some but not all of the functions which it performs in Claim 1. All that is missing is a casing, and a stud which performs the additional function of acting as a mounting device. The Lord patent (No. 1,996,210) cited by defendant and the Nakken reference seem to supply this deficiency. Lord has a casing substantially similar to the casing of Claim 1 and Nakken employs a stud (referred to in the patent specification as a "vertical post") the upper end of which is attached to the supported instrument, and the lower portion of which is secured to a resilient member. This stud impinges with a grommet in case of excessive lateral displacement. Consequently when we consider Nakken and Lord and Robinson's Vibrashock Suspension together we must conclude that as a whole they contain all of the elements of Claim 1 and that these elements do not perform any new or additional function in the combination of Claim 1 than they previously performed in the three devices just considered.

It might be argued in relation to the vibrashock suspension that the arrangement of the various elements there greatly differs from their arrangement in Claim 1, since in

518

the former case there is some duplication of the various elements under consideration and they are spread out along the periphery of a much larger device, whereas in the latter case the arrangement is more compact and unified.

The answer to this is found in several decisions which hold that reallocation, transposition, or integration of old parts does not amount to invention. See Application of Lockhart, 190 F.2d 208, at page 210, 38 C.C. P.A., Patents, 1195, where the court holds that, as a general rule, there is no invention in making integral that which was before in several parts, but that unification or integration must involve more than mere mechanical skill, and improved results only will not take the case out of the general rule; General Machinery Corp. v. Clearing Machine Corp., 7 Cir., 104 F.2d 553, at page 556, where the court says, "Position, rearrangement and transposition of part do not alone spell invention"; In re Staude, 46 F.2d 579, 18 C.C.P.A., Patents, 894, where the court says, "Repositioning of parts to secure compactness and neatness is not invention." See also Jones-McLaughlin v. Amerada Petroleum Corporation, 10 Cir., 47 F.2d 828, and Burt v. Evory, 133 U.S. 349, 10 S.Ct. 394, 33 L.Ed. 647.

At the trial of this cause plaintiffs introduced evidence tending to show that the Robinson mounts manufactured according to the specifications of Claim 1 in suit had become immediately commercially successful. One of the plaintiffs testified that out of a total of fifteen million dollars' worth of vibration absorption mount business done by Robinson Aviation, Inc. that company had done approximately four million dollars' worth of business on the unit type of mount, and that roughly 70% to 80% of the business in unit mounts had been done in mounts made under Claim 1.

■ However, it is my opinion that the factor of commercial success will not save this claim from invalidity, since "commercial success without invention will not make patentability", Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162. In Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 321,

330, 65 S.Ct. 647, 651, 89 L.Ed. 973, the court pointed out that the consideration of the presence of commercial success is "relevant only in a close case where all other proof leaves the question of invention in doubt." Such is not the case here.

■ From the foregoing I find that Claim 1 of the patent in suit is invalid for want of invention. All the plaintiffs did was to bring together old elements in a mechanism involving no new principle to produce an old result. No matter how skillfully this was done and even though the result marked an advance in efficiency and utility, it was but an exercise of mechanical skill and not invention. See General Bronze Corp. v. Cupples Products Corp., 8 Cir., 189 F.2d 154. "There is no invention in merely selecting and assembling * * the most desirable parts of different mechanisms in the same art, where each operates in the same way in the new device as it did in the old, and effects the same results." Elite Mfg. Co. v. Ashland Mfg. Co., 6 Cir., 235 F. 893, 895.

*Question of Novelty*

Even if we could find that the patent in suit constituted a patentable invention, still we must hold it invalid due to the fact that plaintiffs here were not the original and first inventor or discoverer of any material and substantial part of the thing patented, in view of the Devorss application filed September 2, 1942. 35 U.S.C.A. § 69.

■ The defenses of want of invention and want of novelty are distinct and separate defenses. A person is not entitled to a patent just because he has invented something. He must also be the first to invent the device in question in order to secure a patent. Consequently if a defendant in a patent infringement suit can prove that another has invented the object in question, or an object substantially equivalent thereto, prior to plaintiff, then the court must rule the patent invalid for want of novelty, or phrased in other terms invalid due to anticipation by another. Therefore when a defendant cites a reference as anticipating the patent it becomes necessary to establish the respective dates on which the alleged inventors conceived their invention.

On this issue, as has been found herein, plaintiffs are limited to the date on which they filed their application. When a court is dealing with the question of novelty a patent application filed previously to the application for the patent in suit may be used to show priority of invention. This is not the same as saying that the prior application is part of the prior art. The defense of prior art rests on disclosure, whereas the defense of prior invention rests on actual first conception of the idea. Since Devorss' application was filed in 1942, three years before plaintiffs' application was filed, then within this rule the court may consider it on the question of anticipation. See Baltimore Paper Co. v. Oles Envelope Co., D.C., 13 F.Supp. 951, 954; Permo, Inc., v. Hudson-Ross, Inc., 7 Cir., 179 F.2d 386, 389; United Specialties Co. v. Industrial Wire Cloth Products Corp., 6 Cir., 186 F.2d 426, 429.

 In order to negate novelty it is necessary that all of the elements of the invention or their equivalents be found in one single description or structure where they do substantially the same work in substantially the same way. Dow Chemical Co. v. Williams Bros. Well Treating Corp., 10 Cir., 81 F.2d 495, 501; Trager v. Crest Specialty, D.C., 89 F.Supp. 199; Lincoln Stores v. Nashua Mfg. Co., 1 Cir., 157 F.2d 154. As found herein, Devorss contains every element of Claim 1 except the grommet. The absence of a grommet in Devorss is not fatal to the assertion that it anticipates Claim 1, since Devorss discloses covering the metal surface of the flange, the stud and the mounting disk with rubber. These rubber coverings claimed by Devorss accomplish exactly the same function as Robinson's grommet.

I therefore find that Claim 1 of the patent in suit is invalid for want of novelty in the light of the Devorss patent.

The presumption of validity which ordinarily attaches to a patent has been destroyed or greatly weakened by the examiner's failure to cite important prior patents or by the failure of the file wrapper adequately to cite the prior art. See 69 C.J.S., Patents, § 145, page 586; also H. Schindler & Co. v. C. Saladino & Sons, 1 Cir., 81 F.2d

649; O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656; International Flatstub Check Book Co. v. Young & Selden Co., 4 Cir., 284 F. 831.

No reference is made at all to Nakken and Lord. This oversight is sufficiently grave to weaken the presumption of validity. The fact that the examiner did not mention any particular prior art does not raise a presumption that he was aware of it and did not consider it applicable. Nordell v. International Filter Co., 7 Cir., 119 F.2d 948; Allen v. Barr, D.C., 93 F.Supp. 589.

### Conclusions of Law

From the foregoing I conclude and rule that Claim 1 of Patent No. 2,425,565 issued on August 12, 1947 to Cecil S. Robinson is invalid for want of both invention and novelty.