## PATERNO v. SURRETTE STORAGE BATTERY CO., Inc.
### Civ. A. No. 1749.

District Court, D. Massachusetts.

May 1, 1944.

Louis Karp, of Boston, Mass., for plaintiff.

330

Herbert A. Baker and Carleton W. Spencer, both of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit for infringement of two patents: (1) United States patent No. 2,237,630 applied for July 30, 1940, issued April 8, 1941 and (2) United States patent No. 2,264,188, applied for July 30, 1940, issued November 25, 1941. By oral stipulation of the parties at the trial, the claim involving patent No. 2,264,188 is withdrawn from suit and it is dismissed without prejudice.

The defenses are (1) invalidity and (2) non-infringement. The answer further alleges that the plaintiff knowingly and surreptitiously obtained the patent in suit on a device that was invented by one of the defendant's officials and dismissal is asked of the complaint in suit on the ground that the plaintiff appears in court with unclean hands. The defendant claims further that the court should order the patent in suit to be assigned to it and as alternative relief it claims a "shop right" in the patent.

The patent in suit has one claim.[1] It is described in the specification as a device for protecting and sealing terminals and connections in storage batteries, particularly those used on automobile starting batteries. The specification relates that considerable corrosion has been caused in the terminals and battery connections from leakage of acid from the batteries themselves and this was particularly true of automobile batteries because of vibration. The specification discloses that frequent detachment of connecting cables from the terminal parts of the battery was made necessary in order to remove the acidulated deposits and prevent corrosion of the cable connections. The device of the plaintiff had for its object a more effective protecting device than those already in use.

The plaintiff's alleged invention may be described as a hollow receptacle or member which has a slotted web extending across the receptacle between its top and bottom with a central recess in the web to fit the

terminal post of the battery. The object of the dish-surfaced web and slots is to retain a quantity of grease on the dish on the upper side of the web and replenish the supply of grease in the interior of the receptacle by pouring melted grease through the channels of the web. Thus the plaintiff's device provides a double grease seal on the terminal post of the battery; one at the point where the web encircles the battery post and the other at the point where the lower part of the receptacle filled with grease rests on the cover of the battery. These grease seals prevent the acid from the battery from seeping up along the battery post and attacking the cable connections.

The defendant's sealing device is a nut threaded to fit the threads on a battery post with an upper lip forming a dish on the top of the nut to hold grease. The upper surface of the nut is provided with slots or channels to allow melted grease to be poured to a hollowed out groove in the bottom of the nut. The device provides a double grease seal.

The evidence presented by the plaintiff was rather unconvincing that he had ever manufactured his device for commercial use. The defendant has manufactured his device extensively and is producing it at present for the United States Navy.

The plaintiff's specification describes and he originally made a claim for, a post retaining nut with grease recesses at top and bottom with slots to permit grease to supply the bottom recess. This claim was rejected by the patent office, and never pressed to issue, as reading on Dunn, No. 1,714,467 which will be referred to later.

### Prior Art.

■ The defendant in order to negative invention relies on British patent to Elieson No. 1009, issued January 18, 1905; United States patent to Dunn, No. 1,714,467, issued May 21, 1929; Anderson No. 1,858,383, issued May 17, 1932; Davies No. 1,938,010, issued December 5, 1933; Levi No. 1,995,-184, issued March 19, 1935; Douglas No. 1,999,870, issued April 30, 1935; and

---

[1] A grease-holding and protecting receptacle for sealing a terminal post of a battery, comprising a hollow member adapted to encircle the battery post and contain a quantity of grease therein, a web extending across said receptacle intermediate its height and with a central recess adapted to fit the battery post, said web being formed with a plurality of recesses therethrough, whereby grease may be applied to the interior of the member from the upper side of said web through said recesses and contain a quantity of grease on the upper side of said web in addition to that within the receptacle.

Breisch No. 2,151,650, issued March 21, 1939. Dunn, Davies, and Levi were the only patents cited against the plaintiff's application in the patent office. Cf. Lempco Products, Inc., v. Simmons, 6 Cir., 140 F.2d 58, on the presumptive validity of the patent.

The Elieson and Breisch patents disclose the idea of a grease holding and protecting receptacle comprising a hollow member encircling a battery post and containing a quantity of grease and the idea of a groove on the upper portion of a retaining nut or other device to hold grease against the top of the battery post was disclosed in the Dunn and Davies patents and in the Gondrek-Dixon device referred to later. Levi shows a cable clamp in which there is a channel from the top to the lower portion of the clamp where the latter is grooved out. The purpose of the channel in this patent is to supply grease to the annular groove on the interior of the clamping member. Douglas shows a disc-like member with upturned edges resembling a tea cup which is held down by the retaining nut of the battery or which itself may be threaded and screwed on the battery post. Anderson provides a metal washer which is contained in an open cup adapted to be placed upon the nut of the battery post and the battery cover. In the grease receptacle Anderson placed a felt washer saturated with an oily liquid. The washer acts as a wick to absorb the oily liquid contained in the groove of his container. There is a protruding upper lip on the cup in which more grease or oil may be introduced when the supply of oil is diminished.

The evidence further showed that the Gondrek-Dixon Corporation, of Somerville, Massachusetts, manufactured a cable protector as early as 1935. This device is a receptacle shaped like a sombrero with a circular top which fits over the battery post and forms a sort of mechanical seal where it meets the battery cover. The brim of the sombrero-shaped device had an upturned edge which served as a grease holding receptacle. The plaintiff had been employed by this firm up to 1937 and he testified that it was from this device that he got the idea of his own.

It will be seen from a review of the art that grease holding and protecting receptacles comprising a hollow member encircling a battery post and containing a quantity of grease surrounding the post were old when this patentee secured his patent. Grooves, recesses, or lips to hold grease against the top of the battery posts were plainly disclosed in the prior art. To provide a non-binding receptacle as the plaintiff did with his dish-like feature formed by the web was not new. To provide a double grease seal by affording another space at the bottom of a can-like receptacle by inserting a web intermediate at the height of the receptacle does not measure up to invention. The lower space is merely a duplication of a part of well-known devices. No new result is accomplished. When the upper and lower spaces in the receptacle were provided and grease was to be supplied to the lower recess, it was perfectly obvious that to do this without removing the device from the battery post, slots or channels would have to be placed in the upper surface of the web. All that the web accomplishes is to divide the receptacle into an upper and lower chamber and of course center the receptacle about the post.

If you take Dunn's device (No. 1,714,-467) and hollow out the lower part of his grease sealing nut and provide slits or channels in the top groove to allow grease to flow into the under-groove of the nut and effect a double-sealing effect, it could hardly be contended that such an improvement, assuming it is such, involved more than mechanical skill. Having done this with Dunn's superior nut device, you would have an idea on all fours with the plaintiff's device which also provides two receptacles and slots permitting the flow of grease from the upper to the lower.

Again, if you take a lead receptacle in the shape of a can, turn it upside down, punch a hole in the now top (formerly the bottom), to center the can around the battery post, put a rim on this top to provide a cup-shaped recess to hold grease and place slots or channels in this inverted can bottom to allow grease to flow to the lower chamber, you would have a rough description of about all the plaintiff accomplished. This, in my mind, is far from invention.

The idea of placing the receptacle over the battery nut and surrounding the terminal post above the battery nut and the nut itself with grease to keep the acid from the connections, does not involve any new idea or result. It is shown in Anderson, No. 1,855,383, and in Douglas, No. 1,999,870. The mere fact that in the plain-

tiff's device the battery nut does not have to be removed to attach the device is not enough to raise his device to the dignity of invention. This was mechanical skill.

It is my conclusion that even if it were to be considered that the plaintiff made any advance over the prior art, no invention is reflected. The best that can be said is that the mechanical ability is involved. It seems to this court that the plaintiff's patent is invalid for want of invention.

In this view, it will not be necessary to deal with the other defenses, important as they are in view of all the evidence taken before me.

The plaintiff's complaint is dismissed with costs.