NIASH REFINING COMPANY, Inc.,
Plaintiff,

v.

AZOR, Inc., Defendant.

Civ. A. No. 1908.

United States District Court
D. Rhode Island.

Dec. 6, 1957.

William F. Werner, Providence, R. I., Robert Spille, Curtis, Morris & Safford, New York City, of counsel, for plaintiff.

Elliot A. Salter, of Frucht & Salter, Providence, R. I., for defendant.

DAY, District Judge.

This is an action for infringement of U. S. Letters Patent No. 2,-472,958 issued to Jacob M. Oldak on July 14, 1949 for a "Cuff Link Construction" and by him assigned to the plaintiff.

Plaintiff seeks an injunction against further infringement and against further marking by the defendant of cuff link wing backs made by it with the legend "Pat. Pend.", an accounting for profits and damages and costs of suit. In its answer the defendant denies the commission of any acts of infringement within the District of Rhode Island or elsewhere, admits receipt of the notice of the alleged infringement, admits it manufactures cuff link wing backs bearing the legend "Pat. Pend." and asserts that the patent owned by the plaintiff is invalid because of prior art anticipation and want of invention, etc., and further, that by reason of proceedings had or taken in the United States Patent Office in the prosecution of said Letters Patent No. 2,472,958, the plaintiff is estopped from maintaining the same in such scope as to cover the cuff link wing back made, used or sold by it. In support of its contention that said patent is invalid for want of invention by Oldak, the defendant in its answer cites twenty-five Letters Patent, and claims that every material and substantial part of the invention claimed by Oldak was disclosed therein.

The Oldak patent contains four claims which read as follows:

"1. A cuff link of the character described comprising a flat yoke link having intermediate spaced apart arms bordering on a central opening, a button mounting portion terminating one end of the yoke, an integrally formed cross-piece of rectangular cross section interconnecting said arms at the other end of said yoke to border on said opening, an elongated bar toggle swivelly mounted through a midportion thereof on said cross-piece, said bar toggle formed of an elongated hollow shell having tapering opposite ends and parallelly aligning side walls, a closure strip for said shell having opposite ends thereof formed with cut-backs, tabs integrally formed to extend from said tapering opposite ends bent on a

rear side of said shell to neatly fit into said cut-backs for overlappingly securing said strip thereto to provide a smooth rear exterior surface for freely sliding in and out of cuff button holes, and a bowed leaf spring housed within said shell in operative engagement with said cross-piece, the latter extending between said spring and the closure strip to serve as a releasable detent means on pivotal angular movement of said bar toggle with respect to said cross-piece.

"2. A cuff link as defined in claim 1 in which spaced apart integrally formed projections extend from said yoke link arms beyond the cross-piece to provide aligning guard bracing means between which the bar toggle pivots.

"3. A swivel bar toggle of the character described formed with an elongated bar toggle of rectangular cross section swivelly mounted transversely on a rectangular cross-piece, said bar toggle comprising a dished shell having tapered opposite ends each terminating in an edge for freely sliding in and out of cuff button holes, said shell formed with parallelly aligning side walls, a rear wall closure strip for said shell having opposite ends of said strip provided with cut-backs, tabs integrally formed and bent at said edges toward each other on a rear side of said bar toggle neatly fitted into said cut-backs for overlappingly securing said strip thereto, and a bowed leaf spring housed within said shell in operative engagement with said cross-piece, the latter extending between said spring and said closure strip to serve as a releasable detent means on pivotal angular movement of said bar toggle with respect to said cross-piece.

"4. In combination, a one-piece yoke formed with spaced apart link arms and a cross-bar of rectangular cross section, an aligning guard bracing projection extending from each arm beyond said cross-bar, an elongated swivel bar toggle of rectangular cross-section swivelly mounted transversely on said crosspiece between said bracing projections, said bar toggle comprising a dished shell having parallelly aligning side walls terminating in tapered end portions, a rear side closure strip for said shell having opposite ends of said strip provided with cut-backs, tabs integrally formed with said end portions and bent toward each other to clampingly secure the strip in closed position and neatly fitted into said cut-backs to present a smooth freely sliding surface into and out of cuff button holes, and a bowed leaf spring housed within the shell in operative engagement with said cross-piece to serve as a releasable detent means on pivoted movement of said bar toggle on said cross-piece."

The file wrapper history of the Oldak patent shows that the application therefor, as originally filed on June 18, 1948, contained five claims. These claims were rejected on March 23, 1949 by the examiner on the ground that they were met by prior patents, Visanska No. 423,-841, issued March 18, 1890, Anderson No. 2,396,668, issued March 19, 1946 and British Patent, Martin No. 2,184, issued May 31, 1878. No other references were cited by the examiner in his rejection. Following this action by the examiner the application was amended to contain the four claims set forth above. In requesting allowance of the claims as amended the applicant emphasized that the features of his claims as amended upon which patentability should be predicated were (1) the "cut-backs" and (2) the parallelly aligning side walls of the hollow shell comprising the bar toggle. These features he contended did not appear in any of the construction provided in the patents relied upon by the examiner for his rejection of the earlier claims. Subsequently, on May 11, 1949, the examiner allowed the application, as amended, and

the patent issued on June 14, 1949. In the Letters Patent the only references cited by the examiner were those previously cited by him, namely, Visanska, Anderson and Martin.

The Oldak construction of a cuff link comprises a yoke link having an ornamental button secured to its upper extremity by soldering or the like and having at its lower extremity a transversely extending cross-piece rectangular in cross section. This cross-piece extends through a bar toggle comprising a dished shell having a bowed leaf spring positioned therein and having a closure strip at its upper extremity. The cross-piece extends through opposite openings provided in the side walls of the shell and is positioned between the spring and the closure strip whereby turning movement of the yoke and its cross-piece will cause the parts to releasably maintain the inserting position or the wearing position of the wing back. The closure strip at the upper extremity of the shell is provided with cut-backs at each end thereof which serve to receive tabs integrally formed to extend from the tapering opposite ends of the shell bent on a rear side of said shell to neatly fit into said cut-backs to provide a smooth rear exterior surface when assembled.

The advantage which Oldak emphasized as resulting from his construction was the production of a smooth rear exterior surface for freely sliding in and out of cuff button holes.

During the trial testimony was presented by the plaintiff as to the filing of the application, its amendment, and issuance and to the substantial commercial success enjoyed by the construction described in its patent. It also offered evidence as to its alleged infringement by the defendant's construction. Defendant produced expert testimony as to the anticipation of plaintiff's construction by prior art and designed to show non-infringement by its product. It also introduced as an exhibit a book containing the twenty-five prior patents cited in its answer.

After a consideration of all of the evidence and a study of the prior pertinent art cited by the defendant I am convinced that the general structure and combination of elements asserted in the Oldak claims were anticipated by Ponarouse No. 960,698 issued June 7, 1910; Hone No. 2,093,723 issued September 21, 1937, and Simpson No. 2,197,882, issued April 23, 1940. In addition, the use of a closure strip secured to the shell or lower portion of the toggle is taught in two prior patents, Nelson Re-No. 9931, reissued November 15, 1881, and Howard No. 273,844, issued March 13, 1883. The spring arrangement set forth in Oldak is likewise disclosed in Covell No. 231,541, issued August 24, 1880, Dolloff No. 244,867, issued July 26, 1881, and in the Howard, Nelson and Visanska patents. And the shape of the shell is anticipated by Schwartz Des. No. 150,098, issued June 29, 1948.

While the term "cut-back" does not appear in any of the prior patents, I think its use is shown in substance in Merz No. 1,804,944, issued May 12, 1931. And in the Howard and Nelson patents a depression or recess is provided at the marginal edges of the closure plate for receiving the bent over ends of the shell and securing the plate and shell. In my opinion it is of no consequence whether the seat in which the inwardly bent tab ends rest and produce a flat smooth surface is called a "cut-back" or "recess".

The test of patentability is well stated in Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, at page 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 where the Supreme Court said:

"A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention', 'more ingenuity * * * than the work of a mechanic skilled in the art.' (citing cases). This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is

**508**

truly indebted to the efforts of the ·patentee. * * *"

While it is true that no single prior art reference shows Oldak's overall combination, I think that one skilled in the art with all the aforementioned prior art references before him could make the construction claimed by him without inventive faculty and that no uncommon skill was involved on his part in producing his construction.

In my opinion the construction by Oldak does not rise to the dignity of invention and the patent is invalid. Fowler v. Sponge Products Corporation, 1 Cir., 1957, 246 F.2d 223; Wasserman v. Burgess & Blacher Co., 1 Cir., 1954, 217 F.2d 402. The fact that his construction has enjoyed substantial commercial success cannot vitalize the patent. Moreover, the testimony would seem to indicate that this commercial success was due to extensive advertising and to the substitution of a spring of undisclosed material for the steel spring formerly used in the Oldak wing back, rather than to any features of construction disclosed in his patent.

█ I am aware that the allowance of a patent by the Patent Office creates a presumption of its validity. But the presumption may be destroyed or greatly weakened by the examiner's failure to cite adequately pertinent prior art. O'Leary v. Liggett Drug Co., 6 Cir., 1945, 150 F.2d 656; Gerald M. Friend, Inc., v. Walsh, 2 Cir., 1944, 141 F.2d 180; H. Schindler & Co. v. C. Saladino & Sons, 1 Cir., 1936, 81 F.2d 649; Robinson Aviation, Inc., v. Barry Corp., D.C.Mass.1952, 106 F.Supp. 514; Paterno v. Surrette Storage Battery Co., Inc., D.C.Mass.1944, 56 F.Supp. 329. Here the examiner failed to cite most of the pertinent prior patents which I have considered and deem to anticipate Oldak's construction. Had he considered them, it is possible that the application for a patent would not have been allowed.

█ The fact that he did not cite them does not raise a presumption that

he considered them and found them inapplicable. Nordell v. International Filter Co., 7 Cir., 1941, 119 F.2d 948; Robinson Aviation, Inc., v. Barry Corp., supra.

Finding, as I do, that the patent is invalid for want of invention, it becomes unnecessary for me to consider the issue of infringement.

Judgment shall be entered for the defendant.