**CARLTON MANUFACTURING CO., Plaintiff,**

v.

**FRAM CORPORATION, Defendant.**
**Civ. A. No. 2554.**

United States District Court
D. Rhode Island.
Dec. 29, 1961.

---

Arthur H. Feiner, Providence, R. I., William R. Hulbert, Charles C. Winchester, Jr., Boston, Mass., for plaintiff.

S. Everett Wilkins, Jr., Providence, R. I., Richard F. Walker, Boston, Mass., for defendant.

DAY, District Judge.

In this action plaintiff seeks a declaratory judgment that U.S. Letters Patent No. 2,824,707 issued to the defendant on February 25, 1958, as assignee of Walter V. Kennedy, and relating to the construction of a sheet metal spool is invalid, or if valid, is not infringed by the plaintiff.

In its complaint the plaintiff asserts that said patent is invalid because of prior art anticipation and want of invention, etc., and further, that in any event that the proper scope of said patent does not cover sheet.metal spools manufactured and sold by the plaintiff.

In its answer the defendant admits that it is the owner of said patent, admits that the plaintiff manufactures and sells certain sheet metal spools as claimed by it, asserts that said patent was legally issued to it and denies that the plaintiff may rightfully manufacture and sell its spools without infringing said patent. It further asserts it has given written notice to the plaintiff of its infringement and counterclaims for injunctive relief against further infringement, for an accounting of profits and damages, costs, etc.

The Kennedy patent contains three claims which read as follows:

"1. A spool comprising a metal barrel having projecting tabs at the ends thereof and a metal head at each end of the barrel, each head being provided with slots to receive the tabs and with an annular channel having a wall disposed at right angles to the plane of the head and forming a ring that embraces an end portion of the barrel, and wherein said tabs project through said slots and are bent laterally away from the drum axis and downward into the channel to lie parallel to the body of the barrel to embrace said wall with the ends of the tabs abutting against the bottom of the channel.

"2. A spool according to claim 1 wherein the tabs are bent laterally at an angle of 90° and downwardly through another angle of 90°.

"3. A spool comprising a metal barrel having projecting tabs at the ends thereof and a metal head at each end of the barrel, each head being provided with a sunken annular channel having a wall disposed at right angles to the plane of the head and forming a ring that embraces an end portion of the barrel, each head also having at least three arcuate slots disposed within said wall, and wherein said tabs project through said slots and are bent laterally away from the axis of the drum at an angle of 90° and downwardly at a second angle of 90° into the channel to lie parallel to the body of the barrel to embrace said wall with the ends of the tabs abutting against the bottom of the channel."

The file wrapper history of the Kennedy patent shows that the application

therefor was filed on December 2, 1955. As originally filed it contained three claims. These claims were rejected by the examiner on August 29, 1956 on the ground that they were anticipated by the Mungen patent No. 2,036,969, issued April 7, 1936. No other reference was cited by the examiner in his rejection. On December 28, 1956 the applicant amended his application by inserting in claim 1, line 8, and in claim 3, line 10, after the word "channel" the words "to lie parallel to the body of the barrel". Applicant made no amendment to claim 2 as originally filed. In requesting allowance of his application, as amended, he emphasized that his construction greatly increased the strength of the head securing means over that disclosed by Mungen. In support of this he stressed that (1) his construction provided a circular ring or wall which surrounds and embraces the barrel superior to the embracing channel shown in Mungen and (2) that the tabs described in his claims are wide and arcuate and are bent through an angle of 180° so that they lie parallel to the body of the barrel thereby causing the ends of the tabs to seat firmly against the bottom of the annular channel in the head. In such a construction, he contended, any outward pressure on the heads would be exerted against the ends of the tabs. These features, he claimed, differentiated his construction from that of Mungen and provided a much more secure construction than did the latter. Subsequently, on December 12, 1957, the examiner allowed said application, as amended. In the Letters Patent as issued the only reference cited by the examiner was that previously cited in his rejection of the original application, namely, Mungen.

The Kennedy patent purports to provide a new and novel means for firmly securing the spool heads to the spool barrel in a sheet metal spool. As shown by the drawings and specifications, Kennedy has provided a sheet metal cylindrical barrel having three projecting tabs at each end thereof. These tabs are designed to be inserted into and to project through corresponding slots in the heads. The method of attaching each of the heads is identical.

Each of the heads is countersunk or indented near the hub portion thereof to form a circular or annular channel having a wall disposed at right angles to the plane of the head, forming a ring which is adapted to embrace an end portion of the barrel. In assembling, an end portion of the barrel is forced into said ring which embraces it, the tabs thereof projecting through said slots in the head. Said tabs are then by means of a specially constructed die bent successively in two directions—first laterally and outwardly from the axis of said barrel at an angle of 90°, and then downwardly at a similar angle into said channel so as to lie parallel to said wall and to embrace the same with the ends of said tabs abutting against the bottom of said channel.

During the trial the parties presented much testimony as to the prior art in the construction of sheet metal spools and sheet metal containers. Many patents were also introduced as exhibits.

After a consideration of all of the evidence and a study of the pertinent prior art, I am convinced that the general structure and means for securing the heads to the barrel, asserted in the Kennedy claims, were anticipated by Mungen patent No. 2,036,969, Mossberg No. 773,218, issued October 25, 1904, the Seymour spool, the early Mason spool and the Orianna spool, as shown in Cohen No. 2,857,665, which was being sold commercially prior to the date of Kennedy's alleged invention and with which he was admittedly then familiar.

Mungen shows a spool barrel with projecting tabs, a spool head with slots to receive the tabs, and an annular channel disposed at right angles to the plane of the head forming a ring that embraces an end of the barrel wherein the tabs project through the slots in the head and are bent laterally away from the barrel axis and downward into the channel to embrace said wall, with ends abutting against the bottom of said channel. However, it is true that Mungen did not teach that the tabs should be bent at an

angle of 180°, as did Kennedy, and it is equally true that Mungen employed narrow tabs in contrast to Kennedy's construction.

Mossberg clearly taught a head construction similar to Kennedy's with the same wall or ring on the head to strengthen it and to embrace the barrel, producing a stronger union between the head and the barrel.

The testimony establishes that the Seymour spool, which was being sold commercially in 1934, used tabs on the barrel which were pushed through slots in the head and bent outwardly at an angle of 90°. Similarly, the early Mason spool which was sold commercially at the same time as the Seymour spool discloses tabs bent at an angle of 180°, downwardly upon an upstanding wall or ring with two bearing points, one on the upper portion of the wall or ring, and the other in the channel at the base of the wall. The tabs appear to bear a parallel relation to the wall, but because of their length they extend inwardly from said wall along the plane of the head.

The Orianna spool was first sold commercially early in 1955. Admittedly it was seen and examined by Kennedy prior to his alleged invention. Orianna employed wide arcuate tabs which after being pushed through slots in the heads were curled outwardly and then downwardly over flanges projecting from said heads with the ends of said tabs abutting on the surface of the head.

In his testimony and in his request for allowance of his application, with said amendments to its claims Kennedy stressed his use of the vertical wall or ring to embrace the barrel and of wide, arcuate tabs which were bent outwardly rather than inwardly from the outer edge of the barrel. In addition, he asserted as elements of his invention the double bearing feature of his tabs, at the top of his wall or ring and in the channel at the bottom of said wall. All of these features he emphasized contributed to greater strength of the union between the heads and the barrel of the spool. Clearly these features were taught by Mossberg, the Orianna spool and the early Mason spool, so-called.

In Sinclair & Carroll Co., Inc. v. Interchemical Corp., 1945, 325 U.S. 327, at page 330, 65 S.Ct. 1143, at page 1145, 89 L.Ed. 1644, the Supreme Court stated the test of patentability to be as follows:

"A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention', 'more ingenuity * * * than the work of a mechanic skilled in the art.' (citing cases). This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee. * * *"

Moreover, the combination of old elements, each performing its known function and which when combined produce a result to be expected does not amount to invention. In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, at page 152, 71 S.Ct. 127, at page 130, 95 L.Ed. 162, the Supreme Court held:

" * * * The conjunction or concert of known elements must contribute something; only where the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

* * * * * *

"Courts should scrutinize combination patent claims with care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws

what is already known into the field of its monoply and diminishes the resources available to skillful men."

While it is true that no single prior art reference in the crowded sheet metal art shows Kennedy's overall combination, I think that one skilled in said sheet metal art, with all the aforementioned prior art references before him, could make the construction effected by him without inventive faculty and that no uncommon skill was involved on his part in producing his construction. Nor can it be said that said combination produced any unexpected result.

■ I believe that the construction by Kennedy does not rise to the dignity of invention. In my opinion the patent is invalid for want of invention. Fowler v. Sponge Products Corporation, 1957, 1 Cir., 246 F.2d 223; Wasserman v. Burgess & Blacher Co., 1954, 1 Cir., 217 F.2d 402; Associated Folding Box Co. v. Levkoff, 1952, 1 Cir., 194 F.2d 252; Niash Refining Company, Inc. v. Azor, Inc., 1957, D.C.R.I., 158 F.Supp. 505, aff'd 1 Cir., 259 F.2d 552.

■ While it would seem that the Kennedy construction has enjoyed some measure of commercial success, such success without invention cannot vitalize the patent. Toledo Pressed Steel Co. v. Standard Parts, Inc., 1939, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334.

■ I appreciate that the allowance of a patent by the Patent Office creates a presumption of its validity. However, such presumption may be destroyed or greatly weakened by the examiner's failure to cite pertinent prior art. Scripto, Inc. v. Ferber Corporation, 1959, 3 Cir., 267 F.2d 308; Hyster Company v. Hunt Foods, Inc., 1959, 7 Cir., 263 F.2d 130; O'Leary v. Liggett Drug Co., 1945, 6 Cir., 150 F.2d 656; H. Schindler & Co. v. C. Saladino & Sons, 1936, 1 Cir., 71 F.2d 649; Niash Refining Company Inc. v. Azor, Inc., supra. Here the examiner failed completely to cite the most pertinent prior art which I have considered and deem to anticipate Kennedy's construction. Had it been considered by

him, it is possible that the application, even as amended, would not have been granted by him.

■ The fact that he did not cite this most pertinent prior art does not raise a presumption that he considered it and found it inapplicable, Nordell v. International Filter Co., 1941, 7 Cir., 119 F.2d 948; Robinson Aviation, Inc. v. Barry Corp., 1952, D.C.Mass., 106 F.Supp. 514.

■ Finding as I do that said patent is invalid, the issue of infringement raised by the defendant's counterclaim becomes moot. An invalid patent cannot be infringed, Hyster Company v. Hunt Foods,, Inc., supra; Simmons Company v. A. Brandwein & Co., 1957, 7 Cir., 250 F.2d 440; Cummings v. Moore, 1953, 10 Cir., 202 F.2d 145; Niash Refining Company, Inc. v. Azor, Inc., supra.

Judgment will be entered declaring said Letters Patent No. 2,824,707 invalid for want of invention, and dismissing the defendant's counterclaim.