AMERICAN TUBE AND CONTROLS, INC.

v.

GENERAL FITTINGS COMPANY.

Civ. A. No. 3697.

United States District Court
D. Rhode Island.

June 28, 1968.

Alfred B. Stapleton, Joachim A. Weissfeld, of Graham, Reid, Ewing & Stapleton, Providence, R. I., Dana Raymond, New York City, for plaintiff.

Matthew W. Goring of Hinckley, Allen, Salisbury & Parsons, Providence, R. I., William R. Hulbert, Boston, Mass., for defendant.

## OPINION

DAY, Chief Judge.

This is an action for infringement of U.S. Letters Patent No. 3,035,614 for improvements in an expansion tank to be used in hot water heating systems. Said U.S. Letters Patent was issued on May 22, 1962 on the application of Chester H. Kirk, Jr., filed on November 4, 1959, who thereafter assigned his entire right and interest therein to the plaintiff.

In its complaint the plaintiff alleges that it is the owner of said patent and that the defendant has infringed and is continuing to infringe said patent by the manufacture, use and sale of expansion tanks in this District and elsewhere in the United States; that it has notified the defendant of its infringement and requested it to desist therefrom, but that it refuses to do so. Plaintiff seeks a permanent injunction restraining the defendant from further infringement, damages and costs, including a reasonable attorney's fee, as provided in 35 U.S.C. § 284.

In its answer the defendant denies that it has infringed said U.S. Letters Patent No. 3,035,614, and asserts that said patent is wholly invalid and void for want of invention by the applicant for said patent and prays for the entry of judgment dismissing said complaint, declaring that said U.S. Letters Patent No. 3,035,614 is invalid and unenforceable, that defendant's tanks do not infringe said patent, and enjoining plaintiff from bringing further suits for infringement against the defendant or any buyers or users of its tanks, and for costs, including a reasonable attorney's fee.

Subsequent to the filing of its answer, the defendant, as required by 35 U.S.C. § 282, filed a notice of prior art relied upon by it. It stated therein that in addition to the references cited against said patent in the Patent Office, the defendant intended "to rely upon United States Patent No. 2,815,152 issued December 3, 1957 to Lindley E. Mills."

This matter is now before me upon the motion of the defendant for summary judgment in its favor that said Letters Patent No. 3,035,614 is invalid as a matter of law for want of invention under the provisions of 35 U.S.C. § 103[1] and applicable authorities.

In support of said motion the defendant relies upon the depositions of the said Chester H. Kirk, Jr., taken on behalf of the defendant on March 14, 1967, copies of allegedly pertinent prior art, and the file wrapper of said U. S. Patent No. 3,035,614. The plaintiff in opposition to said motion has filed affidavits by the said Chester H. Kirk, Jr. and Norman E. Westphal and certain exhibits referred to therein.

Said expansion tank as described in the specifications of said patent and its drawings is divided into two compart-

---

1. 35 U.S.C. § 103 provides:
   "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

ments by a flexible diaphragm which spans the tank and is hermetically sealed to the tank wall so that the portion of the tank above the diaphragm may be filled with water and the portion of the tank below the diaphragm may be filled with compressed gas. The water side of the tank is in direct communication with the hot water heating system. Once charged with gas, the other side is permanently sealed by a plug at the bottom of the tank.

The objective of this type of tank is to smooth out any fluctuations that may occur in the pressure or volume of water in the heating system. When the water in the system is heated and expands, the diaphragm flexes downward and the gas is further compressed; when the water cools and contracts, the diaphragm flexes upwardly and the gas expands to fill the increased space available. The diaphragm transmits pressure freely but prevents unwanted commingling of the gas with the water in the heating system.

It is undisputed that the plaintiff, as early as 1954, made and sold an expansion tank employing the same principle of two compartments separated by a flexible diaphragm.

The file wrapper of the patent in suit shows originally that six claims were filed by the applicant which endeavored to preempt the basic two-compartment tank structure without any limitation as to the particular structure chosen to effect the diaphragm seal. The Examiner, on April 27, 1960, rejected all of said claims as unpatentable over prior art. In response thereto the applicant cancelled his Claim 6 and undertook to convince the Examiner that his remaining claims 1–5 should be allowed. The Examiner thereafter, on May 5, 1961, again rejected the remainder of said claims as unpatentable over the prior art.

The file wrapper further shows that following this rejection, a conference occurred between the attorney for the applicant and the Examiner. Subsequently, on February 8, 1962, the applicant filed an amendment to his application wherein he made changes in its specifications, cancelled his remaining original claims and substituted therefor six new claims, upon which said patent was eventually issued.

As allowed said claims, originally numbered 7–12, read as follows:

1. An expansion tank comprising a hollow body member having a side and end walls, a flexible diaphragm in and spanning said body member between said end walls and having a peripheral portion in peripheral engagement with said side, a continuous ring having a groove in its outer periphery engaging and receiving said peripheral portion and an inwardly extending peripheral rib in said side engaging said peripheral portion of said diaphragm and compressing it into said groove to secure said ring and diaphragm against movement and seal said diaphragm to said side.

2. An expansion tank comprising a hollow body member having a side and end walls, a flexible diaphragm in and spanning said body member and having a peripheral portion peripherally engaging said side, a thickened bead on said peripheral portion, a continuous ring having a groove in its outer periphery receiving said bead and retaining said peripheral portion in engagement with said side, and a peripheral indentation in said side engaging said bead and compressing it into said groove to retain said ring and diaphragm against movement and effect a seal between said side and said diaphragm.

3. An expansion tank comprising a pair of hollow body members, each having an end and a tubular skirt portion, said skirt portions being united in end-to-end relation to form a tank, a flexible diaphragm in and spanning said tank and having a peripheral portion in peripheral engagement with the skirt of one of said body members, a continuous retaining ring engaging said peripheral portion and retaining

it in engagement with said skirt of said one body member, a groove in the exterior of said ring and a substantially complemental corrugation in said skirt of said one body member compressing said peripheral portion into said groove to secure said diaphragm against movement endwise of said tank and seal said diaphragm to said skirt.

4. The expansion tank according to claim 3 wherein said hollow body members are substantially similar.

5. A method of making an expansion tank comprising inserting into the peripheral portion of a substantially dome-shaped diaphragm a continuous ring, inserting said diaphragm and ring into a first hollow body member having an end and a skirt projecting therefrom and terminating in an edge to dispose said peripheral portion of said diaphragm and said ring in said skirt in spaced relation to the edge of said skirt with said peripheral portion between said ring and said skirt, deforming said skirt inwardly in alignment with said ring to form an inwardly extending peripheral rib compressing the peripheral portion of said diaphragm against said ring and securing said diaphragm in said skirt in leak-proof relation thereto, and uniting said skirt of said first body member at its edge with the skirt of a second body member to form a tank.

6. A method of assembling an expansion tank comprising the steps of inserting a circular retainer ring within the annular peripheral portion of a flexible diaphragm so as to support the diaphragm on the ring, positioning the ring and diaphragm carried thereby into a first tank section having a skirt so as to locate the ring and diaphragm against the interior surface of said skirt, applying pressure to said skirt and the ring to form a sealing and locating joint having a rib formation on the skirt and a groove on the ring with said dia-phragm peripheral portion interposed there between, and mounting a second tank section on said first tank section and sealing the joint therebetween.

In said amendment there appears the following statement:

"The claims submitted by this amendment are the same as those proposed at the interview.—Each of the references of record was reviewed at the interview and it was pointed out wherein the references are devoid of the teaching of the ring as claimed and its cooporation with the diaphragm coupled with the rib formation on the tank body member which effects the seal. Accordingly, the Examiner indicated that claim 7 [renumbered claim 1] is patentably distinguishable from the reference of record. * * *" [File wrapper p. 37]

Each of the claims which the Examiner allowed is limited to this narrowly defined "ring and rib" structure designed to seal said diaphragm. In allowing said claims, as amended, and granting said application, the Examiner cited as references of record six United States patents and one foreign patent. He did not cite said Mills patent which related to a pressurized dispensing package and method. In the specifications of that patent the container is described as follows:

"The interior of the container is divided into a product chamber 15 and a propellant chamber 16 by a flexible diaphragm 17 formed and positioned within the container in such fashion that, when it is flexed, preferably without elastic deformation, in one direction, the product chamber 15 is large * * * and the propellant chamber 16 is small with respect to the total volume of the container and, when it is flexed in the other direction, the product chamber 15 is small, * * * and the propellant chamber 16 is large with respect to the total volume of the container." [col. 6, lines 9–19]

As in the case of the patent involved herein, the purposes of the Mills diaphragm are to separate the liquid side of the pressurized container from the gas side transmitting pressure freely, but preventing the commingling of the gas with the liquid and to provide a method whereby a fluid can be stored in a container and subsequently dispensed therefrom as desired without contamination with a propellant gas.

One of the specifications in the Mills patent is explicit in teaching the public the precise structure best adapted to secure the flexible diaphragm to the walls of the container. It reads as follows:

"In one modification, as shown in figures 1 and 2, the diaphragm 17 is cup-shaped and is formed to fit substantially one half the inner surface of the container. The edge section 21 of the diaphragm 17 adjacent to its open end or side is secured tightly between a circumferentially central section 22 of the container body wall 11 and an internal bracing ring 23 of suitable width and circumference positioned within the open end of the cup-shaped diaphragm." [col. 6, lines 27–34]

The simplest method of assembling the structure is described in Mills as follows:

"The diaphragm can be secured in the container in the position just described by assembling the diaphragm 17 and the bracing ring 23 inside the container and then rolling an inwardly extending groove of suitable dimensions in the container wall 11 as illustrated in Figures 1 and 2." [col. 6, lines 35–40]

The standard of invention to be applied under 35 U.S.C. § 103 was recently restated by the Supreme Court in Graham v. John Deere Co., 1966, 383 U.S. 1, at page 17, 86 S.Ct. 684, at page 694, 15 L.Ed.2d 545 to be:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

The broadest claim of plaintiff's patent is Claim 1 which reads:

"An expansion tank comprising a hollow body member having a side and end walls, a flexible diaphragm in and spanning said body member between said end walls and having a peripheral portion in peripheral engagement with said side, a continuous ring having a groove in its outer periphery engaging and receiving said peripheral portion and an inwardly extending peripheral rib in said side engaging said peripheral portion of said diaphragm and compressing it into said groove to secure said ring and diaphragm against movement and seal said diaphragm to said side."

Every single structural element of this claim is identically disclosed by Mills. The alleged inventive "ring and rib" diaphragm seal relied upon before the Examiner is identical to that taught by Mills.

The file wrapper shows clearly that the two method claims of plaintiff's patent, Claim 5 and Claim 6, were allowed upon the following argument of the applicant.

"Claim 11 [now renumbered 5] defines a method of making an expansion tank. The method calls for the steps of inserting a continuous ring into the peripheral portion of a diaphragm and then inserting the diaphragm mounted on the ring into a first tank body member within the skirt portion thereof at a location spaced from the edge of the skirt.

The claim then calls for the step of deforming the skirt inwardly at the ring to form an inwardly extending rib compressing the diaphragm against the ring to form a seal. As pointed out hereinabove none of the references teaches the formation of such a sealed joint by the structure or method referred to. The Examiner indicated that Claim 11 would be allowed in the absence of more recent prior art.

"Claim 12 [now renumbered Claim 6] is drawn generally along the lines of Claim 11 but recites the method in somewhat different language." [File Wrapper, pp. 37–38]

No significant difference appears between the operations claimed in the two method claims of plaintiff's patent and the method of assembly disclosed in said Mills patent.

The three remaining claims of plaintiff's patent, Claims 2, 3 and 4, carry forward the basic "ring and rib" structure of Claim 1, but in addition present two additional features not taught by Mills, viz: a thickened bead on the peripheral portion of the diaphragm and a tank made of "two substantially similar" halves.

Before the Patent Office, the inventive contribution of these two features was never asserted. In said amendment, there is merely this statement as to said claims:

"Claims 8–10 [now renumbered Claims 2–4] are drawn along the lines of Claim 7 [now Claim 1] reciting the invention in somewhat different language and in varying degrees of specificity. At the interview it was indicated that Claims 8–10 appear to be patentable along with Claim 7." [File Wrapper, p. 37]

In fact, the location of a thickened bead on said diaphragm had been taught by four [2] of the six references cited by the Examiner and Mr. Kirk admitted in his pre-trial deposition that at the time of his alleged invention he was aware that containers made of "two substantially similar" halves welded together were being used in the gas container business as early as 1958.

The resources available to him at the time of his application for said patent thus included (1) gas containers made of two "substantially similar" halves welded together, (2) beaded diaphragms, and (3) the ring and rib diaphragm seal disclosed by the Mills patent.

In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, the Supreme Court, at page 152, 71 S.Ct. 127 at page 130, 95 L.Ed. 162, states the law applicable to patents for combinations of old elements to be:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned, and there is nothing to indicate that the lower courts scrutinized the claims in the light of this rather severe test. * *

Two and two have been added together, and still they make only four.

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements."

The "ring and rib" diaphragm seal produced no new function in the expansion tank of Kirk that it did not produce equally in the structure of Mills. In Mills, it sealed a flexible diaphragm to the inner periphery of a cylindrical metal container, thus separating a pressur-

Huber Patent No. 2,345,124; Overbeke Patent No. 2,394,401; MacDuff Patent No. 2,893,433; Hobson Patent No. 2,728,494.

ized gas from a pressurized liquid. In Kirk also, it sealed a flexible diaphragm to the inner periphery of a cylindrical metal tank, thus separating a pressurized gas from a pressurized liquid.

It was not unexpected that by locating the diaphragm at a point remote from the weld the diaphragm was preserved from damage.

The welded halves of the Kirk tank were strong and did not leak; but the welded halves of the prior art gas tanks of which Kirk admitted knowledge, were also strong and free from leakage. Each of the old elements in Kirk's tank performs the same function and produces the same result in the combination that it performs and produces alone.

In Graham v. John Deere Co., supra, the Supreme Court, 383 U.S. at page 33, 86 S.Ct. page 702, held:

"It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office. [citations omitted]. Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent. * * *"

Here the text of the patentee's own amendment to his application makes the basis of its allowance clear. As hereinbefore recited, in said amendment there is this statement:

"Each of the references of record was reviewed at the interview and it was pointed out wherein the references are devoid of the teaching of the ring as claimed and its cooperation with the diaphragm coupled with the rib formation on the tank body member which effects the seal. Accordingly the Examiner indicated that Claim 7 [now renumbered 1] is patentably dis-

tinguishable from the references of record." [File Wrapper p. 37]

■ Every one of the six claims allowed is so limited. Without the "ring and rib" seal of Mills nothing nonobvious remains that can be considered to rise to the dignity of invention. In my opinion said patent is invalid for want of invention. Fowler v. Sponge Products Corporation, 1957, 1 Cir., 246 F.2d 223; Wasserman v. Burgess & Blacher Co., 1954, 1 Cir., 217 F.2d 402; Associated Folding Box Co., Inc. v. Levkoff, 1952, 1 Cir., 194 F.2d 252; Niash Refining Company, Inc. v. Azor, Inc., 1957, D.C.R.I., 158 F.Supp. 505, aff'd 1958, 1 Cir., 259 F.2d 552.

■ While it is clear that said Kirk construction has enjoyed substantial commercial success, such success cannot serve to validate a patent which is plainly lacking in invention. Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Toledo Pressed Steel Co. v. Standard Parts, Inc., 1939, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; George P. Converse & Co., Inc. v. Polaroid Corporation, 1957, 1 Cir., 242 F.2d 116.

■ Similarly, improved efficiency of operation and economy of manufacture will not suffice to sustain patentability where invention is lacking. McCord Corp. v. Beacon Auto Radiator Co., Inc., 1952, 1 Cir., 193 F.2d 985.

■ I appreciate that the allowance of a patent by the Patent Office creates a presumption of its validity. Scripto, Inc. v. Ferber Corporation, 1959, 3 Cir., 267 F.2d 308; H. Schindler & Co. v. C. Saladino & Sons, 1936, 1 Cir., 81 F.2d 649. Here the Examiner failed to cite the most pertinent prior art—the Mills patent—which disclosed the alleged invention of the Kirk patent. Had the Mills patent been considered by him, it is probable that said application, as amended, would not have been allowed by him.

■ The fact that the Examiner did not cite the most pertinent prior art

does not create a presumption that he considered it to be inapplicable. Nordell v. International Filter Co., 1941, 7 Cir., 119 F.2d 948; Carlton Manufacturing Co. v. Fram Corporation, 1961, D.C.R.I., 201 F.Supp. 18; Robinson Aviation, Inc. v. Barry Corp., 1952, D.C.Mass., 106 F. Supp. 514.

Since there is no genuine issue as to any material fact in this case, the defendant's motion for summary judgment in its favor is granted. Judgment will be entered declaring that said Kirk United States Patent No. 3,035,614 is invalid for want of invention.